SIMPSON *v.* UNITED STATES (No. 530). VANDEGRIFT *v.* UNITED STATES (No. 531).[1]

COTTON WASTE, NOT ADVANCED IN VALUE.
Cotton waste recovered from mill sweepings or used cotton waste is not "advanced in value" by processes of combing, washing, and bleaching in the sense implied by "advanced in value" appearing in section 313, tariff act of 1909. It is entitled to free entry under that act.

United States Court of Customs Appeals, October 12, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7111 (T. D. 31001).

[Reversed.]

*Comstock & Washburn (Albert H. Washburn* and *J. Stuart Tompkins* of counsel) for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain cotton waste imported at Philadelphia was classified by the collector of customs as cotton waste advanced in value and assessed for duty at 20 per cent ad valorem under the provisions of paragraph 313 of the tariff act of August 5, 1909, the part of which material to the case is as follows:

313. * * * *Cotton waste* and flocks manufactured or otherwise *advanced in value,* twenty per centum ad valorem.

---

[1] Reported in T. D. 31952 (21 Treas. Dec., 397).

The importers protested that the merchandise was not cotton waste advanced in value, but that it was cotton waste entitled to free entry under paragraph 548 of the free list, which paragraph is as follows:

548. Cotton, and cotton waste or flocks.

The Board of General Appraisers sustained the protest as to 10 bales of the importation described as "pulled waste" and overruled it as to that part denominated "washed or bleached waste." From the decision, in so far as it overruled the protest, the importers appealed. No appeal was taken by the Government from that part of the decision sustaining the protest as to 10 bales of pulled waste.

The facts in the case are practically undisputed and are about as follows: The goods in question are the product either of cotton waste which has been used for cleaning machinery or of the mill sweepings of cotton mills or of a mixture of both. The cotton waste which has been used to clean machinery is of course impregnated with oil and dirt and thereby has lost its usefulness to the consumer as a cotton waste. The mill sweepings are made up of soiled cotton waste and of dirt, bits of leather, and other refuse swept up from the floors of the mills. Neither mill sweepings nor used cotton waste would be accepted as a good delivery of the lowest grade of cotton waste. The payment of freight on a high percentage of unserviceable material and the inflammable nature of oil-soaked cotton practically precludes the importation into this country of used cotton waste or of mill sweepings. The mill sweepings and used cotton waste are in fact a spoiled cotton waste and have no value in their foul condition either to the consumer or the manufacturer of cotton waste. Mill sweepings and used cotton waste are not thrown away, however, as worthless refuse, but are sold to those who make a business of bringing such materials to some degree of usefulness as cotton waste by separating the cotton fiber therein from its impurities. This is accomplished by putting the material through a machine which combs out the dirt and all other foreign matter, with the exception of the oil and grease absorbed by the fiber. The oil and grease, if any there be, are then eliminated by washing the cotton with water and acids. Although this washing bleaches the material to some extent, it is fairly evident that the primary purpose of the washing is not to bleach but to cleanse, and that whatever of bleaching results from the use of acid to remove grease and oil is more than counterbalanced by injury done to the fiber. If the product is cleaned solely by combing out the dirt it is "pulled waste." If it is cleaned by washing it is called "washed waste." From mill sweepings about 50 per cent of available material can be recovered; that is to say, 10,000 pounds of mill sweepings will produce about 5,000 pounds of pulled waste which, if it contains oil or grease, must be

further treated by washing with water and acid before it reaches the stage of a very low grade of cotton waste.

The cotton waste which is recovered by these processes is not and could not be sold to the consumer as a cotton waste, but is mixed by the manufacturer with 75 per cent of No. 1 white waste. The cost of No. 1 white waste to the manufacturer is from 6 to 9 cents per pound, and as he receives for the finished product not more than from 8½ to 9 cents per pound, the adulterant may be said to represent his margin of profit. Used cotton waste and mill sweepings are bought and sold in Europe at prices which run from five-eighths of 1 cent per pound to 1½ cents per pound. The average price of "pulled waste" and "washed waste" in the same market averages about 3¾ cents per pound.

As popularly understood, cotton waste is that refuse of cotton manufacture which is used to clean machinery and as packing for axle boxes (Standard Dictionary; Century Dictionary), and so far as the evidence discloses that same understanding of the term attaches to it in the trade. Manifestly, and as appears from the record, mill sweepings and used cotton waste are not fit to clean machinery or pack axle boxes. With these as the facts in the case we do not see how it is possible to escape the following conclusions:

First. That mill sweepings and used cotton waste are not cotton waste within the trade or popular understanding of that term, and that the cotton fiber which is a constituent part of such sweepings and used cotton waste ceased to be cotton waste when it became so contaminated with dirt, grease, oil, and other foreign matter that it was no longer serviceable or marketable as cotton waste.

Second, that mill sweepings and used cotton waste are nothing more than the crude materials from which a cotton waste may be reclaimed or recovered.

Third, that the cotton waste so reclaimed or recovered is at best one of the lowest grades of cotton waste and is of such an inferior quality that it is not salable to the consumer, but is serviceable only to the manufacturer of cotton waste, who mixes it with No. 1 cotton waste and utilizes it as an adulterant to reduce the cost of making merchantable cotton waste.

Fourth, that while mill sweepings and used cotton waste have been advanced in condition by converting them into a cotton waste of low grade, the cotton waste so evolved has not itself been advanced in condition or subjected to further treatment or processing to advance its value.

It appearing to our satisfaction that the cotton waste under discussion is a reclaimed or recovered cotton waste of low grade; that it has not been restored to its natural state, much less advanced

beyond that condition; that it was not manufactured or advanced in value after its restoration to the status of a cotton waste; and that it is inferior to the normal cotton waste, which, although worth nearly twice as much, is admitted free of duty, we must decide that the importation is entitled to free entry. To hold otherwise would mean that a cotton waste just as it falls from the mill must be admitted free and that an inferior cotton waste recovered from the same material after it has become refuse by use or otherwise can not be so admitted, which would be an anomaly the introduction of which into the tariff law of 1909 we can not assume was the real intention of Congress.

The decision of the Board of General Appraisers is *reversed*.