UNITED STATES *v.* B. R. ANDERSON & Co. and GEO. S. BUSH & Co. (No. 3269)[1]

United States Court of Customs and Patent Appeals, January 27, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham*, special attorney, of counsel), for the United States.
*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellees.

[Oral argument December 12, 1929, by Mr. Higginbotham and Mr. Baldwin]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves the proper classification of merchandise known as "wipers" or wiping rags, which consist of cotton rags selected and laundered, with buttons, hooks, and other foreign matter removed. They were classified by the collector under the provisions of paragraph 1457 of the Tariff Act of 1922 as "waste, not specially provided for," at 10 per centum ad valorem.

The importers protested the classification of the collector and claimed the merchandise free of duty under paragraph 1516, free of duty under paragraph 1561, free of duty under paragraph 1601, free of duty under paragraph 1560, dutiable at 5 per centum ad valorem under paragraph 901 as "cotton waste, manufactured or otherwise advanced in value," or dutiable at the rate of 10 per centum or 20 per centum under paragraph 1459 as a nonenumerated article. In the protest is found the following: "Each of the claims asserted herein is made with the proviso and condition that the rate claimed is lower than the rate assessed."

The court below sustained the protest and held the goods classifiable under paragraph 901 as "cotton waste, manufactured or otherwise advanced in value," and dutiable at 5 per centum ad valorem.

The Government appealed to this court and here contends that the "wipers" should be classified under paragraph 1459 as articles manufactured in whole or in part, not specially provided for, and dutiable at 20 per centum ad valorem.

Appellees in this court pressed only the claim that the merchandise is dutiable under paragraph 901 at the rate of 5 per centum ad valorem as "cotton waste, manufactured or otherwise advanced in value," and by virtue of the quoted sentence contained in the protest importers state that "the 20 per centum rate being higher than the rate assessed, was thus automatically stricken out by the protest itself from the list of claims relied on." We agree with the appellees that the claim for the 20 per centum rate under paragraph 1459 was not before the court below nor before this court, but we think

that the claim was before the collector and he should have classified the goods under paragraph 1459 as a nonenumerated manufactured article and assessed duty thereon at 20 per centum ad valorem

We are of the opinion that the merchandise was not cotton waste at the time of importation nor was it cotton waste before it was processed or manufactured or advanced. Cotton waste is defined in the dictionaries as follows:

*Cotton waste.* The refuse of cotton manufacture used to clean machinery and as packing for axle boxes, etc.—*The Standard Dictionary.*

*Cotton waste.* Refuse cotton yarn used to wipe oil and dust from machinery, and as packing for axle boxes, etc.—*The Century Dictionary.*

*Cotton waste.* Refuse yarn of cotton mills.—*Webster's New International Dictionary.*

In various decisions courts have held cotton waste as a mill waste and as the refuse of cotton manufacture. *Salomon & Co.* v. *United States,* T. D. 27453, 11 Treas. Dec. 884; *Simpson* v. *United States,* 2 Ct. Cust. Appls. 222, T. D. 31952; *Lane & Co.* v. *United States,* T. D. 39966, 45 Treas. Dec. 41.

In *Simpson* v. *United States, supra,* Judge Smith, in delivering the opinion of the court, said:

The goods in question are the product either of cotton waste which has been used for cleaning machinery or of the mill sweepings of cotton mills or of a mixture of both. * * *

As popularly understood, cotton waste is that refuse of cotton manufacture which is used to clean machinery and as packing for axle boxes (Standard Dictionary; Century Dictionary), and so far as the evidence discloses that same understanding of the term attaches to it in the trade.

When considering the Tariff Act of 1922, Congress had before it the Summary of Tariff Information, 1921, and on pages 1293 and 1294 thereof is found the following:

Waste is made at every machine process as cotton passes through the mill. A larger percentage of waste is made in the manufacture of fine yarns than of coarse, but the average is estimated at 15 per centum, of which 12 per centum is reworked into inferior products or otherwise utilized and 3 per centum lost in the form of sand and moisture. There are two kinds (1) soft waste, which has no twist and is made at machines up to the spinning frame, including such types as motes, card fly, flat and cylinder strips, and roving waste; and (2) hard waste, having some twist, which is made at the spinning frame and subsequent machines, including such types as spinning waste, cop bottoms, reel waste, and twister waste. Hard waste must be torn up into its original fibers by a special machine before it can be reworked; soft waste needs only to be cleaned before reworking. Cotton waste is used as filling in making cotton blankets, flannelettes, cheap trousering, towels, etc., and as both warp and filling in making sacks, scrubbing cloths, and dishcloths, etc.; also for candle and lamp wicks, wadding for surgical purposes, guncotton, etc. * * *

The conclusion that Congress had the foregoing definitions of cotton waste in mind when it used that term in paragraph 901 is persuasive. Importers contend, however, that in none of the cases cited by

the Government, or decided by this court, was the question of the applicability of paragraph 901 to merchandise similar to the importation involved here before this court; that the rags before processing were cotton waste; and that the processing meets exactly the qualifying term "manufactured or otherwise advanced in value" found in the paragraph.

Importers further contend, in support of their argument, that before the processing described the rags were cotton waste, and that the decision in *Central Vermont Railway Co.* v. *United States*, 10 Ct. Cust. Appls. 31, T. D. 38260, is controlling.

In the last-cited case this court had before it worn-out pulp felts used in paper-making machines in Canada, which felts were composed entirely of wool. The court held them to be dutiable under that portion of paragraph 651, Tariff Act of 1913, providing for "all other wastes not specially provided for in this section," the applicable portion of which paragraph reads as follows:

651. Wool wastes: All noils, top waste, card waste, slubbing waste, roving waste, ring waste, yarn waste, bur waste, thread waste, garnetted waste, shoddies, mungo, flocks, wool extract, carbonized wool, carbonized noils, and all other wastes not specially provided for in this section.

A careful reading of that decision and the reasons for so holding is convincing that the reasons there applied do not apply in the instant case. Congress in paragraph 651, *supra,* included shoddies, mungo, flocks, wool extract, and many other things. Congress intended that the discarded pulp felts should be included within paragraph 651, but no similar reasons prevail here to indicate that Congress intended rags to be included within the provision of paragraph 901, for "cotton waste, manufactured or otherwise advanced in value."

Importer also cites *Harley* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644, in which this court had under consideration unwashed cotton rags and said that they were "that class of *waste* known as junk." (Italics ours.) It is true that this court said that unwashed cotton rags are a class of waste known as junk, but this is far from saying that they are cotton waste. Of course the merchandise at bar before processing was a waste product, in a broad sense, but not the cotton waste provided for in the paragraph under consideration.

In *Pacific Iron & Metal Co.* v. *United States*, 15 Ct. Cust. Appls. 433, T. D. 42605, this court held:

Rags from which buttons, hooks, buckles, and other foreign matter had been removed and which had been laundered, imported for use as wipers are not "junk, old," under free-list paragraph 1601, Tariff Act of 1922, because the manufacturing efforts bestowed upon them have removed them from such classification. They are not waste, as assessed, under paragraph 1457, at 10 per centum; nor are they cotton waste under free-list paragraph 1560. They are not "rags * * * used chiefly for paper making" under free-list paragraph 1651, since they belong to a class of rags which are not chiefly so used. They are not a non-

enumerated unmanufactured article at 10 per centum under paragraph 1459, but they are a nonenumerated manufactured article at 20 per centum under the same paragraph. [Quoted from syllabus.]

In the opinion delivered by Judge HATFIELD, it is said:

However, in the case at bar, the rags were not laundered and the buttons, hooks, and other foreign matter removed for the purpose of isolating a material from its impurities or getting a commercial commodity by itself. The rags were so processed for the purpose of removing them from the class to which they belong ("junk, old"), and converting them into a new article having a new character, name, and use—namely, "wiping rags" or "wipers."

It will be noted that the court there did not have under consideration paragraph 901, and the citation by the Government is, no doubt, chiefly for the purpose of showing that this court has held goods like the importation to be sufficiently advanced to be dutiable under paragraph 1459 as a nonenumerated manufactured article at 20 per centum ad valorem.

Importers here urge with much plausibility that even if the goods are not directly dutiable under paragraph 901, they are nevertheless dutiable under that paragraph by virtue of the similitude clause in paragraph 1460, since they claim that the goods at bar are similar to the merchandise provided for in paragraph 901 in material, quality, texture, or the use to which they may be applied.

The record shows that the goods in controversy are used for wiping and cleaning machinery and that the same are used ofttimes where cotton waste, composed of threads, can not be used on account of the threads becoming entangled with the machinery, the question of lint being also a consideration; that it was dangerous to use a mass of threads or waste in gas or Diesel engines, and that particles of waste get into the gas line or carburetor and cause trouble; that on large, heavy machines and steam engines, on which these conditions do not prevail, thread waste, as well as "wipers," might be and is used; that thread waste is also used for boxings of cars.

It is at once apparent that in order to wipe portions of machinery where it would be necessary to get into narrow spaces thread waste might be used where the use of rags would be impracticable, if not impossible, and while there may be instances where either could be and is used interchangeably, it seems apparent that there is a difference in this use by reason of the nature of the articles, and certainly there is no such similarity or interchangeability in use as to require or permit the application of the similitude doctrine.

It is not shown in the record, or in any of the cases or authorities cited, that rags are ever used or are capable of use in axle boxes. Of course it is not essential that the uses of the two articles under consideration should be identical; they are only required to be similar. An incidental or fugitive similar use or a use similar in one slight

particular and different in many others certainly could not be regarded as a similar use.

Notwithstanding the fact that both articles are cotton, we are sure that there is no substantial similarity in material, quality, or texture within the meaning of the paragraph. The material of one is cotton cloth. The material of the other is cotton thread. The texture is entirely different. We arrive at the conclusion, therefore, that the merchandise at bar can not be classified under paragraph 901 by similitude.

The judgment of the court below is *reversed* without approving the classification of the collector, which, under the circumstances, must stand.