(C. D. 1530)

A. N. DERINGER, INC. *v*. UNITED STATES

United States Customs Court, Second Division

(Decided June 10, 1953)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* and *Joseph Schwartz* of counsel) for the plaintiff.

*Charles J. Wagner,* Acting Assistant Attorney General (*Richard H. Welsh* and *Samuel D. Spector,* special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Out of an importation of 39 bales of merchandise invoiced as "Machine Pressed * * * Rags," the dutiable status of 9 bales, containing hand-wound balls of cotton warp ends, is brought into question by this action. As in the case of the remaining 30 bales, the classification of which is not here involved, these disputed items were entered free as paper stock, pursuant to paragraph 1750 of the Tariff Act of 1930. Nevertheless, this merchandise was classified by

the collector as cotton cord within the provisions of paragraph 912 of said act, and duty was accordingly assessed upon said nine bales at the rate of 35 per centum ad valorem.

Although the protest perpetuates the position taken by the plaintiff at the time of entry, as the case comes to us plaintiff has confined its claim for a recovery herein to the allegations that the merchandise in issue is either waste, not specially provided for, and therefore dutiable at the rate of 7½ per centum ad valorem, pursuant to the provisions of paragraph 1555 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, or that it is cotton waste, advanced in value, dutiable at the rate of 5 per centum ad valorem, by virtue of paragraph 901 (c) of said act.

Counsel for the defendant relies upon the collector's decision, but urges, alternatively, that if the merchandise at bar is not cotton cord, it is covered by the provision for plied cotton yarn, not exceeding number 60, in paragraph 901 (b) of said act, as modified by said trade agreement, which is dutiable at the rate of 10 per centum ad valorem, plus 0.25 per centum for each yarn number.

The tariff provisions here invoked read as follows:

Paragraph 901 (b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*:

Cotton yarn, including warps, in any form, bleached,
dyed, colored, combed, or plied:

Of numbers not exceeding number 60_____ 10% ad val. and, in addition thereto, for each number, ¼ of 1% ad val.

Paragraph 901 (c) of the Tariff Act of 1930:

Cotton waste, manufactured or otherwise advanced in value, cotton card laps, sliver, and roving, 5 per centum ad valorem.

Paragraph 912 of the Tariff Act of 1930:

* * * tubings, garters, suspenders, braces, cords, tassels, and cords and tassels; all the foregoing, wholly or in chief value of cotton or of cotton and india rubber, and not specially provided for, 35 per centum ad valorem; * * *.

Paragraph 1555 of the Tariff Act of 1930, as modified by said General Agreement on Tariffs and Trade:

Waste, not specially provided for, 7½% ad val.

At the trial, plaintiff introduced, by deposition (plaintiff's exhibit 1), and in seriatim form (plaintiff's exhibit 2), the testimony of Gordon Brock Lawrence, superintendent of the Cosmos Imperial Mills, Imperial Division, the exporter of the merchandise at bar, as well as the oral testimony of John R. Burke, assistant treasurer of P. Garvan, Inc., the ultimate consignee. There was also received in evidence as plaintiff's exhibit 3, an official sample taken by the customs officials

at St. Albans, and, as exhibit 4, one of the balls taken from one of the bales in this shipment. No evidence was offered by the defendant.

It appears from the record as made in this case that in the production of cotton hose and belting duck there remain on the spools holding the warp threads, short lengths of yarn not consumed in the manufacturing process. The origin and subsequent treatment of this material are described by the witness, Lawrence, in the following manner:

> The No. 1 Thrums or hand wound balls are created as follows: In making warps we must, by demand, work to set lengths of cloth on most of our ducks. We control this length at the twisting frame where the correct yardage is twisted or plied. Due to tensions, stretch, etc., we must allow some tolerance to ensure that the warp does not end up under required length. We then, having made the complete warp, have a small length of yarn on each of a great number of spools. Because of its short length, we cannot rewind and use in our own production because of the tremendous number of knots necessary to join these small lengths to make a length which is usable. To illustrate, we quite often find ourselves with about five yards left on each of any number of spools up to fifteen hundred. To reuse this, we would have 20 knots in 100 yards in each spool we recovered and this number of knots would not be accepted by the trade. These short lengths are pulled off the spools and become hand wound balls, Coarse or Fine, or #1 Thrums.

If these short lengths are not wound into balls, they are in a loose, tangled mass, substantially in the form of plaintiff's exhibit 3, and are known as ply-yarn waste. In that condition, they are used by manufacturers of high-grade paper, or, when the market is right, for garnetting into shoddy. In the ball form, represented by plaintiff's exhibit 4, this material is known as mop ball yarn, from which cheap mops, for very rough use, are made.

There is an advantage in having this material in ball form as it does not tangle so readily and is easier to pull apart. Plaintiff conceded that the winding of the warp ends constitutes an advancement in value, as the ball form of the merchandise commands a higher price than the unwound variety, but contends that this falls short of a manufacturing process, since, in either state, the condition of the fibers in the yarn remains the same. In view of the provisions of paragraph 901 (c), *supra*, if this merchandise is, in fact, cotton waste, advanced, it is immaterial that it has not also been manufactured.

Whether the merchandise, in its condition as warp yarns on the spools of the looms in the factory, consisted of cotton cords, as classified by the collector, or of plied cotton yarns, as alternatively claimed by the Government, it seems clear that in its condition as imported it was no longer suitable for the purpose for which it was originally created. Because of the short lengths, as compared with the lengths of fabric produced by the manufacturer, the use of these yarns in the making of cloth was commercially impracticable.

The testimony establishes that these ends of yarn are used for paper making, or are garnetted into shoddy, or, when wound into balls, for the manufacture of very cheap mops. The evidence may also be said to show that this material, in its imported condition, was not purposely produced for further processing into other articles, but that it is a residue or waste material resulting from the manufacture of certain cotton cloths described as hose and belting duck. It, therefore, responds precisely to the definition of waste, which is to be found in the case of *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644, and which reads as follows:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture. * * *

In the case of *United States* v. *Crompton & Son*, 6 Ct. Cust. Appls. 197, T. D. 35442, short waste ends of new, unused jute thread, being the warp ends that drop off in the making of jute fabrics, were held to be "a thread waste or waste of the threads used in the making of such bagging for cotton, gunny cloth, and similar fabrics," dutiable, as classified under the Tariff Act of 1913, as waste, not specially provided for.

We have no doubt, therefore, that, in the tariff sense, the merchandise at bar is waste, which, if not more specifically provided for elsewhere, falls within the provisions of paragraph 1555, *supra.* Plaintiff contends, however, that there is a tariff provision which more specifically encompasses the instant merchandise, and that such provision is the one in paragraph 901 (c), *supra*, for cotton waste, advanced in value. In connection with this claim, both parties invite our attention to the case of *United States* v. *B. R. Anderson & Co. and Geo. S. Bush & Co.*, 17 C. C. P. A. (Customs) 393, T. D. 43833, wherein certain cotton wiping rags, classified as waste, not specially provided for, pursuant to the provisions of paragraph 1457 of the Tariff Act of 1922, were claimed to be dutiable as cotton waste, manufactured or advanced in value, as provided for in paragraph 901 of said act. In holding that the collector should have classified the goods as a nonenumerated manufactured article under paragraph 1459 of said act, the court stated:

We are of the opinion that the merchandise was not cotton waste at the time of importation nor was it cotton waste before it was processed or manufactured or advanced. Cotton waste is defined in the dictionaries as follows:

*Cotton waste.* The refuse of cotton manufacture used to clean machinery and as packing for axle boxes, etc.—*The Standard Dictionary.*

*Cotton waste.* Refuse cotton yarn used to wipe oil and dust from machinery, and as packing for axle boxes, etc.—*The Century Dictionary.*

*Cotton waste.* Refuse yarn of cotton mills.—*Webster's New International. Dictionary.*

In various decisions courts have held cotton waste as a mill waste and as the refuse of cotton manufacture. *Salomon & Co. v. United States,* T. D. 27453, 11 Treas. Dec. 884; *Simpson v. United States,* 2 Ct. Cust. Appls. 222, T. D. 31952; *Lane & Co. v. United States,* T. D. 39966, 45 Treas. Dec. 41.

In *Simpson v. United States, supra,* Judge Smith, in delivering the opinion of the court, said:

> The goods in question are the product either of cotton waste which has been used for cleaning machinery or of the mill sweepings of cotton mills or of a mixture of both. * * *
>
> As popularly understood, cotton waste is that refuse of cotton manufacture which is used to clean machinery and as packing for axle boxes (Standard Dictionary; Century Dictionary), and so far as the evidence discloses that same understanding of the term attaches to it in the trade.

When considering the Tariff Act of 1922, Congress had before it the Summary of Tariff Information, 1921, and on pages 1293 and 1294 thereof is found the following:

> Waste is made at every machine process as cotton passes through the mill. A larger percentage of waste is made in the manufacture of fine yarns than of coarse, but the average is estimated at 15 per centum, of which 12 per centum is reworked into inferior products or otherwise utilized and 3 per centum lost in the form of sand and moisture. There are two kinds (1) soft waste, which has no twist and is made at machines up to the spinning frame, including such types as motes, card fly, flat and cylinder strips, and roving waste; and (2) hard waste, having some twist, which is made at the spinning frame and subsequent machines, including such types as spinning waste, cop bottoms, reel waste, and twister waste. Hard waste must be torn up into its original fibers by a special machine before it can be reworked; soft waste needs only to be cleaned before reworking. Cotton waste is used as filling in making cotton blankets, flannelettes, cheap trousering, towels, etc., and as both warp and filling in making sacks, scrubbing cloths, and dishcloths, etc.; also for candle and lamp wicks, wadding for surgical purposes, guncotton, etc. * * *

The conclusion that Congress had the foregoing definitions of cotton waste in mind when it used that term in paragraph 901 is persuasive. * * *

The parties differ in their interpretation of the *Anderson* case, *supra.* Plaintiff contends that it stands for the proposition that the term cotton waste means waste from any of the operations of a cotton mill, that is, mill waste; whereas defendant so construes the decision as limiting "cotton waste" to "the refuse obtained in the processing of raw cotton."

We are of opinion that it was not the court's intention in the *Anderson* case, *supra,* to draw the fine distinction urged upon us here, and that it did not, in fact, do so. We note, for example, the court's reference to cotton waste as both a mill waste and as the

refuse of cotton manufacture. Indeed, in view of the fact that cotton wiping rags are in no sense a mill waste, there was no occasion for the court to pursue the matter further.

However, in the case of *Felix Salomon & Co.* v. *United States,* 11 Treas. Dec. 884, T. D. 27453, cited in the *Anderson* case, the classification of cotton thread waste, consisting of skeins and warp ends, the latter being "fragments left over from weaving which are practically unfit to be woven into cloth," was directly in issue. The court there accepted testimony that cotton waste covers "any waste material from a cotton mill where cotton goods are manufactured"; and, on the basis of that evidence which was not contradicted, held that the material in issue was within the definition of the term "cotton waste."

The 1948 Summaries of Tariff Information brings out more clearly than the 1921 summary, *supra*, that cotton thread waste, including waste from the loom, falls within the common concept of the phrase "cotton waste." In volume 9 of the former, we find the following:

Cotton waste consists of material that has been discarded, at least temporarily, in the sequence of cotton-manufacturing processes. It is generally divided into soft wastes and hard wastes. Soft wastes include picker motes, card fly, card strips, comber noils, sliver waste, roving waste, clearer waste, and card-room sweepings. Hard wastes include yarn or thread waste from the spinning frame and subsequent machines such as the spooler, warper, slasher, and *loom.* Cotton waste in the form in which it is produced is on the free list (par. 1662), but when it is bleached, dyed, garnetted, or otherwise advanced in value it is dutiable under paragraph 901 (c). [Italics supplied.]

Similarly, the 1947 edition of the Encyclopaedia Britannica, volume 6, indicates that cotton waste results from "Every process in cotton manufacturing, from the picker room through the spinning room and the weaving shed." That authority further states, in its discussion of cotton waste:

*Thread Waste*: Single thread waste is garnetted and mixed with Indian cotton and re-spun for use in the manufacture of flannelette and cotton blankets. Ply thread waste is used primarily as a wiping and polishing material, for packing journal boxes and for automobile oil filters.

The merchandise at bar is a waste which in its imported condition is converted into cheap mops for rough cleaning purposes. It is composed of short lengths of plied cotton yarns left over in the process of weaving a kind of cotton cloth known as cotton duck. These yarns or threads answer completely to the description of cotton thread waste, a type of cotton waste, which, when advanced in value as here conceded to be, is provided for in paragraph 901 (c), *supra*, dutiable at the rate of 5 per centum ad valorem. The claim of the plaintiff to this effect is, therefore, sustained.

Judgment will be entered accordingly.