CENTRAL VERMONT RAILWAY Co. *v.* UNITED STATES (No. 1994).[1]

1. CONSTRUCTION, PARAGRAPH 651, TARIFF ACT OF 1913—"WASTE."

   The word "waste" in paragraph 651, tariff act of 1913, does not include only refuse or waste material resulting or left over from a process of manufacture, and does not exclude manufactured articles which, by wear and tear of use, have become worn-out, unfit and useless for the purposes for which they were made.
2. CONSTRUCTION, PARAGRAPH 651, TARIFF ACT OF 1913—INCONGRUITY TO BE AVOIDED.

   It could not have been the intention of Congress, in the enactment of paragraph 651, tariff act of 1913, to admit shoddy free of duty, and to exclude material for making shoddy from such exemption.

[1] T. D. 38260 (38 Treas. Dec., 82).

3. CLASSIFICATION—WORN-OUT ARTICLES.

Worn-out articles should not be subject to the tariff classification they would have received had they been imported new.

4. EVIDENCE—BURDEN OF PROOF.

It is not sufficient for the protestant to establish that the collector's classification is wrong. He must also show that the one he contends for is right.

5. CONSTRUCTION—DOUBT FAVORS IMPORTER.

In the construction of statutes of doubtful meaning, the importer is entitled to the benefit of the doubt.

6. WORN-OUT PULP FELTS.

Pieces of wool felt, which had been worn out by use on paper-making machines were shown to be imported for the purpose of making shoddy, and to be commercially fit practically for no other purpose. They are admissible free as "wastes not specially provided for," under paragraph 651, tariff act of 1913, and should not have been classified as a manufacture of wool under paragraph 288.

## United States Court of Customs Appeals, February 2, 1920.

APPEAL from Board of United States General Appraisers, G. A. 8262 (T. D. 38052).

[Reversed.]

*Joseph F. Lockett* for appellant.

*Bert Hanson,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, of counsel), for the United States.

[Oral argument Dec. 17, 1919, by Mr. Lockett and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise here is known as discarded pulp felts and is imported from Canada. The original felts of which the importations are pieces were woven fabrics composed entirely of wool, from 8 to 15 feet wide and from 30 to 60 feet long and were used as continuous belts on paper-making machines. When new such fabrics are known as paper-makers' felts. The life of such felts in a paper mill is from 3 to 6 days to from 3 to 12 weeks, depending among other things upon the grade of paper in the manufacture of which they are used. When holes appear in a felt it is repaired as well as may be at the mill, but when its usefulness for its designed purpose is exhausted it is discarded and sold and becomes a subject of importation into this country. Such importations are generally in pieces that are from 2 feet to 6 or 8 feet wide and from 10 to 15 or 20 feet long, sometimes a little longer. The appraiser reported as to these importations, and no question as to the correctness thereof is made, that the felts here are not so badly worn as to show holes or ragged portions and that the smallest piece found by the examiner in one of the imported packages was 6 by 12 feet. These discarded felts are sometimes sold to the inhabitants in the vicinity of paper mills, who use them as horse blankets or bed blankets. The testimony, however, shows that only a very small percentage thereof—not more than 5 or 10 per cent at the most—are so used and that they are not especially desirable

for such uses.   It appears of record that practically the only commercial use of these discarded felts is as material for the manufacture of shoddy.   This is sold to woolen mills, where it is used with wool to make yarn.

An examiner at the port of Boston testified that in the last eleven or twelve years there had been occasional importations of like merchandise at that port which he had passed as wool waste and that since the act of 1913 had been applicable, he had passed it as free under paragraph 651 thereof.

The merchandise was assessed as a manufacture of wool n. s. p. f. at 35 per cent ad valorem under paragraph 288 of the present tariff act, the material part of which is as follows:

288. Cloths * * * and all manufactures of every description made by any process, wholly or in chief value of wool, not specially provided for in this section, 35 per centum ad valorem; * * *.

The importer protested, claiming free entry under paragraph 651, which we quote:

651. Wool wastes: All noils, top waste, card waste, slubbing waste, roving waste, ring waste, yarn waste, bur waste, thread waste, garnetted waste, shoddies, mungo, flocks, wool extract, carbonized wool, carbonized noils, and all other wastes not specially provided for in this section. This paragraph shall be effective on and after the 1st day of December, nineteen hundred and thirteen, until which time the rates of duty now provided by schedule K of the existing law shall remain in full force and effect.

The Board of General Appraisers overruled the protest, a dissenting opinion being filed by one member thereof.   In the prevailing opinion it was said among other things:

The appraiser states that the smallest piece found in the importation was 6 feet by 12 feet.   Whether in such form and condition this felt is a waste at all may be a debatable question, but manifestly it is not one of the wool wastes specifically named in the paragraph, and we are equally certain that it is not a wool waste at all, any more than a discarded suit of clothes made from woolen cloth or a worn-out woolen blanket would be wool waste.   Inasmuch as the claim for free entry under paragraph 651 is the only claim made by protestant, it is unnecessary to pass upon the question of whether the collector's classification was correctly made or whether the classification should have been under paragraph 384 as waste, as, since the protest is overruled, the collector's decision must stand.

In substance, the Government here contends that the term "waste", as used in paragraph 651 relates only to such material as falls away in the manufacture of an article, or such manufactured articles as are spoiled in the course of manufacture, or to spoiled or worthless material (refuse) which can not be used to manufacture the article usually made from it; in other words, that it is a refuse or waste material resulting or left over from a process of manufacture and does not include manufactured articles which by wear and tear of use have become worn out, unfit, and useless for the purposes for which they were made.

In the course of its argument the Government suggests that possibly these pieces of discarded felt may be classifiable as rags, if it appears that they are so torn and ragged as to be of no use except for rag purposes, and we note that rags not otherwise specially provided for are entitled to free entry under paragraph 566.

The importer urges that these discarded felts are within the provision for "all other wastes not specially provided for" contained in paragraph 651.

Both parties cite and rely upon the opinion of this court in Crimmins & Pierce et al. v. United States (6 Ct. Cust. Appls., 137; T. D. 35392), wherein the scope and application of that paragraph was under consideration.

For the purposes of this case that decision is relevant as showing that we were then as we are now of the opinion that to be a waste within the paragraph the merchandise must be deemed first, wool, and second, waste, or that which the statute classes therewith, if not such in every case.

In addition decisions of various other courts are referred to wherein the meaning of the word "waste" as it has appeared in different provisions of the tariff laws is discussed, all of which, and others, have been examined.

It is obvious that in each of these cases the meaning of the word has been construed with reference to the history of the subject matter, the context, and, when manifested, the intention of Congress in the particular legislation.

For the purposes of this decision we deem it unnecessary to discuss in detail these various authorities, though in passing it may be said that in some instances they seem to support the Government's contention as to the meaning of the word "waste," as it appeared in the statute then construed.

The importation, as already appears, has been classified under paragraph 288, which provides for cloth and all manufactures of every description wholly or in chief value of wool; that is, the fact that it is a discarded, and for the purposes of its original manufacture a worn-out, article, has not been thought by the collector to affect its classification. We are not disposed to concur in this view. These felts have become worthless in the use for which they were made; they have for practical purposes ceased to be one of the things provided for in paragraph 288 just as anything which is worn out ceases in common acceptation of the term as it does in fact to be the thing it was when new. True, it may retain its original form, but it can no longer be used in or devoted to the purposes for which it was created, set apart, designed, and adapted. Although it or the materials of which it is composed may still be of value as material to make some other commodity, nevertheless the article itself becomes,

according to the term which may be appropriately employed to designate the same, a waste, a refuse, a rag, a scrap, or a piece of junk. A suit of clothes so torn and worn as to be beyond repair and practically susceptible of no further use as clothing, commonly speaking, would not be called a suit of clothes, at least without the use of some qualifying adjective. Its condition might warrant referring to it as rags, and we have no doubt that in a sense it might appropriately be referred to as "waste," one meaning of which is "something rejected as worthless or not useful; surplus or useless stuff." See Standard Dictionary. In like manner these discarded wool felts, which when new were doubtless properly classifiable under paragraph 288 as manufactures of wool, have lost their first estate and no longer are entitled to such classification.

But it is not sufficient for the importer to establish that the collector's classification is wrong. He must also show that the one for which he contends is right, and we pass to the consideration of whether this is waste within the meaning of paragraph 651. It is wool, but is not one of the eo nomine wastes therein mentioned, and it is urged that the rule of ejusdem generis must exclude it therefrom, it being claimed that the wastes therein enumerated are wastes resulting from manufacturing processes, and hence that the provision for all other wastes must be limited to those of the same kind. This paragraph, however, provides for shoddy, for mungo, and flocks eo nomine. Now, none of those articles are manufacturing wastes, but each is the result of manufacturing processes applied to, among other things, refuse woolen goods, old stockings, rags, cloths, etc., and mungo and flocks, like shoddies, are in turn used as material in producing still other things into the composition of which wool enters. See Patton *v.* United States (159 U. S., 500). We think it may be doubted if the rule of ejusdem generis can be successfully invoked.

However this may be, there is another important consideration here, namely, the intent of Congress in the enactment of the tariff statute of 1913 so far as relates to the subject of wool regarded as a material. It is apparent that in enacting the provisions of Schedule K of that act and the free entry paragraphs 650 and 651 thereof Congress proceeded upon a theory radically different in the treatment of wool generally than that upon which the earlier act was predicated.

This is clearly demonstrated when the following provisions of the respective acts are considered. Paragraph 360 of the act of 1909 provided that all wool should be dutiable at various rates according to class and condition; paragraph 372, that top waste, slubbing waste, roving waste, ring waste, and garnetted waste should be dutiable at 30 cents per pound; paragraph 373, that shoddy should be dutiable at 25 cents per pound, and that noils, wool extract, yarn waste, thread waste, and all other wastes composed wholly or in part of wool, n. s. p. f., should be dutiable at 20 cents per pound; and finally,

paragraph 374 that woolen rags, mungo, and flocks should pay 10 cents per pound duty.

In substance these paragraphs treated all the articles therein mentioned as dutiable at varying rates, evidently regarding them as materials, as in fact they are, and provided that woolen rags, mungo, and flocks should pay the least duty of all.

Now, paragraph 650 of the act of 1913, construed in view of paragraph 286 thereof, gives free entry to the raw material wool, not advanced beyond the washed or scoured condition, and consistently therewith paragraph 651 gives the same privilege to all wastes, substantially repeating the names thereof, that were dutiable under paragraphs 372 and 373 of the act of 1909, including shoddy, and to mungo and flocks, mentioned in paragraph 374, clearly again regarding them as materials. Explicit mention of woolen rags was omitted from paragraph 651, and indeed there seems to be no eo nomine provision therefor in the entire act. This fact, however, does not exclude the view that they might still be deemed in the class of materials as they were in the earlier act. The omission to mention them eo nomine in the act of 1913 might suggest an understanding by Congress that they were covered by the general provision in paragraph 651 for "all other wastes not specially provided for."

The question therefore presents itself in this case, whether in view of the context and of the ascertained congressional intent in enacting the tariff act of 1913 the provision for "all other wastes not specially provided for" in paragraph 651 shall be held to cover the importations here. As already pointed out, they are composed entirely of wool and are commercially usable only as material for the manufacture of shoddy. To say that they are dutiable while shoddy, the product into which they are manufactured, mungo and flocks and also all the specified wool wastes, some of which of common knowledge when regarded as material are superior to these discarded felts, are entitled to free entry is to reach a result that we think is at once incongruous and inconsistent, if indeed it is not absurd, and would result in a discrimination that seems unreasonable and without probable cause for its existence. That such an intention will not lightly be imputed to a legislative body is well settled law to support which the mere citation of authorities without discussion seems sufficient. See cases: United States v. Kirby (7 Wall.; 74 U. S., 482), Church of the Holy Trinity v. United States (143 U. S., 457), Shallus v. United States (162 Fed. Rep., 653), Maltus & Ware v. United States (6 Ct. Cust. Appls.; 525; T. D. 36147). We are unwilling to lend our sanction to such a result.

Again the rule that in the construction of statutes of doubtful meaning the importer is entitled to the benefit of the doubt also makes in favor of the importer's contention here.

We are of opinion that the importer's protest ought to be sustained and the judgment of the Board of General Appraisers is therefore *reversed*.