PEARMAN ET AL. *v.* UNITED STATES (No. 2358).[1]

EVIDENCE—PRESUMPTION FAVORS COLLECTOR.

Upon a protestant rests the burden of showing by a fair preponderance of evidence not only that the collector's classification is wrong but that a claim of the protest is right.—Evidence examined and found insufficient.

United States Court of Customs Appeals, June 9, 1924.

APPEAL from Board of United States General Appraisers, Abstract 46547.

[Affirmed.]

*B. A. Levett* for appellants.

*William W. Hoppin,* Assistant Attorney General (*Samuel M. Richardson* and *Abraham Goodman,* special attorneys), for the United States.

[Oral argument May 20, 1924, by Mr. Levett and Mr. Richardson.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

HATFIELD, Judge, delivered the opinion of the court:

The merchandise the subject of this appeal consists of knitted scarfs and shawls made of hair of the alpaca; it was assessed for duty by the collector at 60 per cent ad valorem under paragraph 358 of the tariff act of 1913, the pertinent part of which reads as follows:

PAR. 358. Laces, lace window curtains not specially provided for in this section, coach, carriage, and automobile laces, and all lace articles of whatever yarns, threads, or filaments composed; handkerchiefs, napkins, wearing apparel, and all other articles or fabrics made wholly or in part of lace or of imitation lace of any kind; * * * all of the foregoing of whatever yarns, threads, or filaments composed, 60 per centum ad valorem.

It is the contention of the appellants that the merchandise is dutiable at the rate of 40 per cent ad valorem, as manufactures in chief value of the hair of the alpaca, under paragraph 308 of the act of 1913, and the further claim is made in some of the protests that the merchandise is dutiable at 35 per cent ad valorem, as wool wearing apparel under paragraph 291 of said act.

Paragraphs 308 and 291 of the tariff act of 1913 read as follows:

PAR. 308. Cloth and all manufactures of every description made by any process, wholly or in chief value of the hair of the Angora goat, Alpaca, and other like animals, not specially provided for in this section, 40 per centum ad valorem.

PAR. 291. Clothing, ready-made, and articles of wearing apparel of every description, including shawls whether knitted or woven, and knitted articles of every description made up or manufactured wholly or in part, and not specially provided for in this section, composed wholly or in chief value of wool, 35 per centum ad valorem.

---

[1] T. D. 40274.

It was the claim of the importers before the Board of General Appraisers, and it is their claim here, that the merchandise is not made wholly or in part of lace or of imitation lace, and that the record in the case clearly supports their contention.

The Board of General Appraisers overruled the protests.

It is the claim of the Government that the scarfs and shawls are made wholly or in part of imitation lace, and that the decision of the Board of General Appraisers is supported by the evidence submitted.

The burden of proof in this case was upon the importers to establish by a fair preponderance of evidence, not only that the collector's classification was wrong, but that the classification contended for by them at the hearing before the Board of General Appraisers was right.—Central Vermont Railway Co. *v.* United States (10 Ct. Cust. Appls. 31; T. D. 38260).

Mr. T. E. Pearman, one of the appellants, testified substantially as follows:

Q. Have you ever dealt in laces in this country?—A. No, sir.

Q. Have you ever known these articles to be sold in the trade under the designation of laces?—A. No, sir.

Q. Did you ever sell any one of these articles as a lace article?—A. No, sir.

Q. Did you ever sell any of them under the designation of imitation lace?—A. No, sir.

Q. Have you ever known of any of them to be sold under that designation in this country?—A. No, sir.

He testified that the merchandise was made on a knitting machine.

It is apparent that the testimony of this witness is confined strictly to his particular activities. He does not offer information as to whether the merchandise is made of imitation lace, nor does he attempt to testify concerning commercial designation.

We quote from the testimony of the witness, J. D. Einstein, called by the importers:

Q. How long have you personally been familiar with the handling of laces?—A. Thirty years.

Q. Of all kinds?—A. Of all kinds.

Q. Will you look at the exhibits in this case, which are marked Exhibits 1 and 2, and state whether you are familiar with that class of merchandise?—A. We have handled similar goods.

Q. Will you state whether you have handled that class of goods under the name of laces?—A. We have not.

\*        \*        \*        \*        \*        \*        \*

Q. Do you handle merchandise known as imitation laces, Mr. Einstein?—A. No; we do not.

Q. Will you look at the articles in question again and state whether those articles imitate any lace that you know of?—A. It does not.

\*        \*        \*        \*        \*        \*        \*

Q. Do you handle lace shawls?—A. We have handled laces—we do; yes.

Q. There is such a thing as lace shawls?—A. There is such a thing; yes.

Q. Are they made of all kinds of laces?—A. All kinds of materials; all kinds of laces.

Q. As a matter of fact I suppose a lace shawl is merely trimmed with lace;. it isn't made entirely of lace?—A. No; a lace shawl is a shawl made of lace.

Q. Made entirely of lace, is it?—A. Yes.

Q. There are scarfs also made of laces?—A. Some are.

Q. You have handled scarfs made of laces?—A. Yes, sir.

It appears from the quoted testimony that the witness had never handled merchandise of the class under consideration, under the name of laces; and although he did not handle merchandise known as imitation laces, he asserted that the merchandise represented by the exhibits in the case does not imitate any lace that he knows of.

He stated, however, that scarfs and shawls are sometimes made entirely of lace.

He did not state directly that the merchandise in question was not made of imitation lace nor did he testify concerning its commercial designation.

We quote from the testimony of one Ernst Adelberg, called as a witness by the importers:

Q. Are you familiar with all degrees of laces?—A. Yes, sir.

Q. Will you look at the exhibits in this case and state whether you have ever bought any articles of that character under the name of laces?—A. I have bought them under the name of Shetland-wool shawls, as a scarf and a square.

Q. Have you ever bought them or heard of them as laces?—A. No.

Q. Do you handle imitation laces?—A. Imitation of the real; yes.

Q. Imitation of the real—how long have you been handling those?—A. Twenty-five years.

Q. Will you state whether, Mr. Adelberg, the articles in question here imitate any lace that you have ever run across in your experience?—A. Never to my knowledge.

*        *        *        *        *        *        *

Q. You say you have handled imitation laces?—A. Yes, sir.

Q. But you have never handled any articles made of imitation lace?—A. No,. sir.

Q. But did I understand you to say that you know there are such articles in the trade?—A. There are imitation laces.

Q. Do you know whether there are articles of imitation laces?—A. No; I would not say that.

Q. You do not know it?—A. No.

Assuming that the statements of the witnesses called by the importers to the effect that the merchandise in question does not imitate any lace known to them, and that they have never handled such or similar articles, and never heard of the same being handled' as lace or imitation lace articles, tended to prove that the merchandise under consideration is not made of lace or of imitation lace, and had the Government offered no evidence, it might have been said that the importers had made a prima facie case, and that the presumption of correctness attending the collector's classification had been overcome.

But the Government submitted substantial evidence, relevant to the issues and contradictory to that submitted by the importers.

We quote from the testimony of the witness David Cohen, called by the Government:

Q. You say you have dealt in articles such as are represented by these Exhibits 1 and 27.—A. Yes, sir.

Q. What, Mr. Cohen, were those articles known as in trade prior to 1913—by what name?—A. Lace scarfs.

      *         *         *         *         *         *         *

Q. Any particular type of lace is the pattern represented by those exhibits?—A. Well, I don't know; they are some particular type of lace because you can make almost innumerable designs, but it has the appearance to me of an English effect.

Q. An English effect?—A. Yes.

Q. How about lace?—A. I mean English lace design.

      *         *         *         *         *         *         *

Cross-examination:

Q. Have you ever made Arenburg scarfs to be sold as lace in this country?—A. They were sold as scarfs, not as lace. They are lace scarfs though, known as lace scarfs.

Q. They were sold as scarfs without the word lace? I am talking about the Arenburg scarfs. If somebody came in and asked you for an Arenburg scarf, would you show him such an article?—A. Yes.

Q. If he asked you for a lace scarf, you would include this in the line?—A. Absolutely.

Re-direct examination:

Q. You said that this would be known as a lace scarf prior to 1913. Was that trade term prior to 1913 uniform, definite, and general?—A. Yes; they called it a lace scarf.

We also quote from the testimony of Joseph C. Schwab, a witness called by the Government:

Q. I show you Exhibits 1 and 2 and ask you if you are familiar with articles such as are represented by those two exhibits?—A. Have I bought them? No.

Q. I say are you familiar with them?—A. I have never bought or sold them, but I have an idea of what they are.

Q. What are they?—A. Lace scarfs.

      *         *         *         *         *         *         *

Q. From your knowledge of the knitting trade, of the lace trade, Mr. Schwab, can you state whether the material represented by the Exhibits 1 and 2 are in imitation lace?—A. They are.

We think that a fair consideration of all the evidence in the case justifies the conclusion that the importers failed to establish, by a fair preponderance of the evidence that the collector's classification of the merchandise was wrong, and that the classification contended for by them was right.

The judgment of the Board of General Appraisers is *affirmed.*