UNITED STATES *v.* QUONG SANG CHONG & Co., WO KEE & Co. (No. 3427)[1]

United States Court of Customs and Patent Appeals, November 2,1931

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty* and *Ralph Folks,* special attorneys, of counsel), for the United States.

*Lawrence A. Harper* for appellee.

[1] T. D. 45277.

[Oral argument October 5, 1931, by Mr. Folks; submitted on brief by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise at issue, entered at the port of San Francisco, Calif., was classified by the collector as fishing nets composed of ramie cord not finer than 11 lea and duty assessed at 18¼ cents per pound plus 10 per centum ad valorem under the provisions of paragraphs 1004 and 1006 of the Tariff Act of 1922. The portions of these paragraphs held by the collector to be applicable read:

PAR. 1004. * * * Threads, twines, and cords, composed of two or more yarns of * * * ramie, * * * twisted together, the size of the single yarn of which is not finer than eleven lea, 18¼ cents per pound; * * *.

PAR. 1006. Gill nettings, nets, webs, and seines, and other nets for fishing,. composed wholly or in chief value of * * * ramie, and not specially provided for, shall pay the same duty per pound as the highest rate imposed in this Act upon any of the thread, twine, or cord of which the mesh is made, and, in addition thereto, 10 per centum ad valorem.

The importer protested, making a number of alternative claims, but upon final hearing before the United States Customs Court, and before this court, relied upon the claim that the merchandise should be classified as manufactures of vegetable fiber under paragraph 1021 of said act and assessed for duty at 40 per centum ad valorem.

PAR. 1021. All woven articles, finished or unfinished, and all manufactures of vegetable fiber other than cotton, or of which such fibers or any of them is the component material of chief value, not specially provided for, 40 per centum ad valorem.

The protest was sustained by the trial court, it being held that the merchandise as imported did not comprise fishing nets but only parts of nets, and, since no provision is made in the act of 1922 for parts of nets, the court found the proper classification to be that claimed by the importer and rendered judgment accordingly. From this judgment the Government appealed to this court.

In the course of its opinion the trial court said:

At the hearing the importers introduced in evidence a representative sample of a complete so-called Chinese shrimp net, the part thereof marked "Exhibit 1" being the merchandise as imported, and the part marked "Exhibit 2" being the part that is attached to or united with Exhibit 1 after importation to form the complete net. The imported part (Exhibit 1) appears to be a large cylindrical piece of netting, hand knitted, wide at the one end or mouth, where the mesh is about 3 inches in size, which netting gradually narrows or tapers in diameter and in the size of mesh up to within about 5 feet of the end, where the diameter is about 18 inches and the mesh about one-half of one inch. From there the net continues for the remainder of its length without any change in diameter or in the size of the mesh. At said end Exhibit 2 appears to have been knitted on, consisting of a cylindrical piece of cotton netting about 8 feet long, also of the same diameter and mesh, the end being open. The complete or combined net,

as shown by said Exhibits 1 and 2, is about 40 feet long, and for catching shrimp is supposed to be fastened to poles set in the ocean bed, and as the tide comes in the net is opened up like a cone and the shrimp are drawn in at the mouth, or wide end, and forced back and trapped in the narrow end, which end is closed by tying twine around it so as to hold the fish inside. The net is pulled up and the shrimp emptied out on the same tide.

The testimony of the importers, which stands uncontradicted, fairly shows that the imported merchandise can not commercially or profitably be used as shrimp nets, for the reason that the short narrow end would not sufficiently catch and hold the shrimp, and that the reason the cotton piece of netting is added to the imported piece is because, when completed shrimp nets were imported made of the ramie-fiber material, the end of the net would not last nearly so long, on account of the ramie being too brittle and breaking at the knots. Furthermore, it is shown that the imported merchandise commercially does not come within any of the designations enumerated in said paragraph 1006.

In passing upon the issues involved in the case this court must bear in mind the well-settled rules—(a) that the presumption of correctness attaches to the collector's classification; (b) that this presumption is not to be regarded as having evidential value, and, where the protestant introduces testimony controverting the presumed facts sufficient to make out a *prima facie* case, the presumption falls; and (c) that this court will not reverse findings of fact by the trial court unless such findings are against the weight of the evidence. *Pearman et al.* v. *United States,* 12 Ct. Cust. Appls. 284, 285, T. D. 40274; *Morse Bros.* (*Inc.*) v. *United States,* 13 Ct. Cust. Appls. 553, T. D. 41432; *Hawley* v. *Letzerich,* 19 C. C. P. A. (Customs) 47, T. D. 44893.

It seems to us that in the instant case the issue is really one of law involving a construction of paragraph 1006, of course, under the facts proven by the record.

At the trial court two witnesses were called by the importer and none by the Government.

We think it fairly deducible from the testimony that the article as imported is not altogether satisfactory for commercial shrimp fishing for two reasons:

First, the smaller end or bottom part, having a diameter of about 18 inches and being some 5 feet in length, is not long enough to trap the quantity which the fisherman desires to catch.

Second, the ramie-fiber material is somewhat brittle and breaks more easily at the knots and is possibly more subject to injury by crabs than is the cotton material.

For these reasons the evidence indicates that it is the practically universal custom to add to the article, when being used by commercial shrimp fishermen, an additional or supplemental part composed of cotton threads such as is represented by Exhibit 2, and which is not a part of the importation. This added part is of the same diameter and mesh as the bottom end of the imported article.

The small end of the ramie article is open. The ends of the cotton article are likewise open, and, when the net is "set" or "spread" for fishing, the bottom end is tied so as to close it and form a trap.

That the bottom of the ramie article might also be tied and thus form a trap which would catch a limited amount of shrimp the record indisputably shows. Wong Hoy Wing, manager of the City Shrimp Co., who employs shrimp fishermen, virtually admits this. Upon cross-examination counsel for the Government, indicating the 18-inch diameter portion of the imported article, asked:

Q. * * * If tied, would it not hold shrimp?

The witness answered:

It would hold shrimp, but it does not last. * * *

The testimony then continues:

Redirect examination by Mr. HARPER:

Q. You say that the part of small mesh in the net, as imported, would hold shrimp, but not enough?—A. No.
Q. Do you mean at one catch you might get more shrimp than could be held in the small net; in the part shown you by Mr. Canty?—A. Yes.

Recross-examination by Mr. CANTY:

Q. There are lots of times at a tide that you get not enough shrimp to fill the upper part of that as in Exhibit 1?—A. You get a certain catch before the tide goes out.
Q. There are times when you are fishing for shrimp that you do not fill this entire net up with shrimp; is that true, at one tide?—A. No.
Q. You do not always fill the net?—A. No.
Q. So there are times when this net is used for catching shrimp that there would be enough of those small mesh in there to answer your purposes, is that true?—A. No; there is not enough.
Mr. HARPER. We will concede, if you like, that at a very poor fishing there might be enough to hold the shrimp.
Mr. CANTY. That is all I want.

It is true that in his direct examination the witness stated that one could not catch shrimp in the article as imported until the cotton back was attached, and Mr. Harry W. Johnson, a "jobber at fish netting, ropes, and twines," but not himself a fisherman, testified practically to the same effect. For example:

Q. If it were just the length as imported, with the 5 or 6 feet at the bottom, would not that catch shrimp?
Justice McCLELLAND. Would it catch them practically and profitably?
The WITNESS. No; that would not catch them. That is too short.

By Mr. CANTY:

Q. Why would it not catch them?—A. The net is set in the bay between poles, and it has to be of sufficient length so that the tide can sweep them from the bottom and keep them. And there is always a little backwash.
Q. Would not the mesh at the lower end of Exhibit 1 retain a certain number of shrimp?—A. Negligibly, I would say; not enough to make it worth while.

Q. You have never been in the shrimp-fishing business, so you do not know of your own knowledge?—A. I have only been down on Hunters Point and I have seen them operate. I have done no fishing myself.

However, the evidence must be looked to as a whole and considered in its entirety. When this is done we are convinced that, while the article as imported is not thoroughly satisfactory for commercial shrimp fishing, it is nevertheless susceptible of being used for fishing and was, in fact, designed as a complete net for that purpose.

The trial court appears to have taken the view that paragraph 1006 contemplated only such nets for fishing described therein as are capable of being used "commercially and profitably."

We are unable to agree that this is a correct legal construction. The fact that the ramie material "would not last nearly so long, on account of the ramie being too brittle and breaking at the knots" is not sufficient to justify a holding that it is not a net. It may not be so good as some other material but the quality can not, in this instance, be held to affect the question of what the involved articles, in fact, are.

Neither do we think it proper to hold that the matter of the length of the trapping portion of the article is here determinative. The article as imported has a bottom end capable of being tied and used to trap and catch shrimp. For commercial fishing where it is desired to trap as large quantities as possible it has been found desirable to add to the length and, because cotton is a more lasting material for the purpose, the cotton addition is used, but, under the testimony, taken as a whole, we can not doubt but that the imported merchandise is complete enough to be used as a net for fishing, and hence is not, as imported, merely a part.

That the article as imported is not altogether satisfactory for commercial fishing unless "pieced out" does not alter the fact that it really is a "net for fishing" and hence is such an article as is contemplated by paragraph 1006, unless, as was found by the court below, in the closing sentence quoted, *supra*, it be excluded therefrom by reason of commercial designation.

The only testimony directed to commercial designation is that of Mr. Johnson. The Government in its brief insists that he was not qualified to testify upon this because he "had only bought and sold fishing nets in California, Oregon, Washington, and Honolulu, and therefore was insufficiently qualified to testify how such term [commercial designation] was used throughout the trade and commerce of the entire United States."

The quoted statement is not altogether accurate. Mr. Johnson's *sales* were confined to the sections named, but he testifies to having *purchased* the merchandise in which he dealt in various parts of the United States, St. Louis, Jersey City, Boston, "from all the principal

manufacturers of this country; and also from one or two in Japan." We are of the opinion that his qualifications were sufficient to render him a competent witness upon the point, but a careful analysis of his testimony leads us to the conclusion that it is not sufficiently specific upon the *merchandise represented by Exhibit 1* to justify a holding that by commercial designation that merchandise is excluded from paragraph 1006.

Attention is again directed to the wording of the paragraph:

Gill nettings, nets, webs, and seines, *and other nets for fishing,* * * *. (Italics ours.)

As we have heretofore indicated, it is our opinion that in the common meaning the involved merchandise is certainly included in the phrase "other nets for fishing," and it is immaterial whether it falls under "nets" in the first part of the paragraph or not.

Mr. Johnson gives what he states is a commercial definition of "gill nettings." He states that "nets and webs referred to finished articles ready for fishing, and both terms are practically synonymous"; that "netting or webbing is the bare stock in stock, you might say, in bales, boxes, or bins"; describes or defines "seines" and says that the involved articles would not fall within the definition of any one of these.

In answer to a question whether Exhibit 1 would be a gill netting, he said, "No, it is not a fishing *netting* in any sense of the word." (Italics ours.)

A little later in his testimony we find the following:

Justice McCLELLAND. Would this [Exhibit 1] be included within the term "net" as you have understood it in any form in the United States, this article here?

The WITNESS. I *hardly think* it falls within the classification, *because we make nothing like it in this country.* (Italics ours.)

The foregoing paraphrases and direct quotations comprehend the substance of all the material testimony upon the commercial designation of the involved merchandise which we find in the record. Nowhere is there anything said of the "other nets for fishing" phrase (under which, in common meaning, the importation certainly falls), unless the last-quoted answer be construed to apply to it. So construing it, we feel that "because we make nothing like it in this country" is not, in any respect, proof of a commercial designation which differentiates from the common meaning and so excludes the articles from the phrase and the paragraph.

Under our view of the law and the evidence in the case we are compelled to conclude that the United States Customs Court *erred* in sustaining the protest.

Accordingly, its judgment is *reversed.*