## P. SILVERMAN & SON v. UNITED STATES (No. 4262)[1]

United States Court of Customs and Patent Appeals, March 4, 1940

*Rice and Ziegel (Henry L. Ziegel* of counsel) for appellant.

*Webster J. Oliver,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, *Richard F. Weeks,* special attorney, and *Frank X. O'Donnell, Jr.,* junior attorney, of counsel), for the United States.

[Oral argument February 6, 1940, by Mr. Ziegel and Mr. Lawrence]

[1] C. A. D. 107.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and. JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal presents for decision the question of the proper classi-- fication for customs duty purposes of "Old Woolen Dryer Felt Waste"ʳ imported at the port of Portland, Maine, under the Tariff Act of 1930.

The merchandise was classified by the collector as *woolen rags* and' assessed with duty at the rate of 18 cents per pound under the pro-- visions therefor in paragraph 1105 of said act.

In the original protest and in an amendment thereto, numerous claims were made by the importer, but here appellant relies for the most part upon the "principal claim" that the merchandise is properly dutiable under paragraph 1555 as "Waste, not specially provided for," at 10 per centum ad valorem.

The merchandise consists of so-called Palmer or sanforizing blankets. which are in a worn-out condition and no longer serviceable for their original purpose. When new, they are chiefly used in textile finishing operations, and "discarded when they have become so worn and burnt by heat and friction as to render them unsuitable for their original. purpose." They are then sold for waste for whatever they will. bring. When so dealt in, they are commonly known as dryer felts. They are imported in sizes varying from 3 feet to 40 feet in width and from 5 feet to 50 feet in length. Some of the merchandise is imported in rolls which have to be unrolled and cut into pieces.

At the trial below, six witnesses testified for the importer, and by the record it is clearly established that the merchandise cannot be used in the woolen industry due largely to the fact that the fibers are too short, and to the additional fact that the heat to which the merchandise has been subjected has rendered it unsuitable for any textile or woolen remanufacture. It is disclosed in the record that although attempts were made to sell the merchandise to manufac- turers of woolen wastes, for such purposes as the making of shoddy, mungo, or flocks, it was not salable as such.

The United States Customs Court, First Division, made the follow- ing finding of facts:

The record clearly establishes that the merchandise in issue is useless for the purpose for which it was originally made and is fit only for use, after manipulation, for another purpose, *i. e.*, for wiping and abrasive purposes in the steel and optical glass industries. It therefore falls within the meaning of the term "waste" as it has been defined and limited by prior decisions of this and other courts. See *Cia Algodonera* v. *United States*, 23 C. C. P. A. 42, T. D. 47686, and cases therein cited.

A sample of the imported merchandise was introduced as Exhibit **2,** and is a piece, about 6 inches square and one-quarter inch thick,

of heavy closely woven felt-like material. One of the special uses shown by the record for the instant merchandise is in the steel industry where it is used to brush away the oxidization of steel before it goes into the roll. After being so used it is thrown away. In order to be used for this purpose, it must be cleaned of excessive grease, and rust which is caused by the material being burned in the textile mill. No use has been found for the very small pieces which have been cut from the larger ones in the preparation of the material for sale.

The trial court held that the merchandise was waste. This fact is conceded by all. The trial court also held that the merchandise had been erroneously classified and that the importation does not respond to the term "woolen rags." Since it is conceded here that the classification is wrong, and since it would seem clear that the imported articles are not the kind of woolen rags for which provision is made in said paragraph 1105, we need give no further consideration to the woolen rag question.

The majority of the court below held, Brown, Judge, dissenting, that since the merchandise was waste and concededly of wool, it was provided for under the term "all other wool wastes not specially provided for," at 24 cents per pound under paragraph 1105, and the protest was overruled without approving the collector's classification. From the judgment of the trial court so holding, importer has appealed here.

The issue presented here is whether or not the merchandise is "Waste, not specially provided for," under paragraph 1555, or whether it is dutiable under the provision "all other wool wastes not specially provided for" in paragraph 1105.

The two paragraphs involved read:

PAR. 1105 (a) Top waste, slubbing waste, roving waste, and ring waste, 37 cents per pound; garnetted waste, 26 cents per pound; noils, carbonized, 30 cents per pound; noils, not carbonized, 23 cents per pound; thread or yarn waste, 25 cents per pound; card or burr waste, carbonized, 23 cents per pound; not carbonized, 16 cents per pound; all other wool wastes not specially provided for, 24 cents per pound; shoddy, and wool extract, 24 cents per pound; mungo, 10 cents per pound; wool rags, 18 cents per pound; flocks, 8 cents per pound.

(b) Wastes of the hair of the Angora goat, Cashmere goat, alpaca and other like animals, shall be dutiable at the rates provided for similar types of wool wastes.

PAR. 1555. Waste, not specially provided for, 10 per centum ad valorem.

The importer contends that the holding of the majority of the trial court is erroneous in that the instant merchandise is not a wool waste as that term is understood in the trade, and that Congress only intended to include in the term "wool wastes not specially provided for," such wastes as were fit for further woolen manufacture.

We have examined all the authorities cited, and while there is language in some of the decisions which seems to fit the facts at bar

to some extent, the facts in all the cases differ very materially from those disclosed by the instant record.

For reasons presently stated, we must conclude that the contention of the Government and the holding of the majority of the trial court cannot be sustained. We agree with the contention of the importer that Congress never intended to include within the term "all other wool wastes not specially provided for" in paragraph 1105 every form of waste that might have a wool characteristic. We are brought to this conclusion, for the most part, by a consideration of the context of paragraph 1105, its legislative history and certain court decisions to which further reference will presently be made. An analysis of paragraph 1105 discloses that everything named therein specifically had, either at the time of the passage of the act or at some time in the prior history thereof, a use in the wool industry in which it came in direct competition with wool.

It is a matter of common knowledge that in all the history of our customs legislation no single article of importation has been given more careful consideration by the various Congresses than has wool and its by-products. Throughout the years, conflicts of interests and the importance of the subject matter seem to have brought about on the part of Congress, especially the legislative committees concerned, a most careful and analytical study of the facts relating to the importation, manufacture and American production of wool and wool articles and it is to be doubted if any other article of international commerce has received more thorough legislative attention.

There has been a provision made in most tariff acts since long before the beginning of the present century not only for wool in its various forms but for wool by-products which were capable of being remanufactured in such way as to compete directly with wool. In most tariff acts in recent years there has been a special provision comparable to paragraph 1105 at bar in which various kinds of wastes were specifically named and a certain rate of duty placed thereon in accordance with the legislative estimate of the amount of wool such importations would displace.

The tariff act of 1913 free listed wool and wool wastes. It provided for wool wastes in paragraph 651 as follows:

651. Wool wastes: All noils, top waste, card waste, slubbing waste, roving waste, ring waste, yarn waste, bur waste, thread waste, garnetted waste, shoddies, mungo, flocks, wool extract, carbonized wool, carbonized noils, and all other wastes not specially provided for in this section. * * *

It will be noticed that in said paragraph 651 there was no provision for woolen rags but that there was a provision for *card waste* and *bur waste* and that there was no specific provision for "wool wastes" except in the introductory words, but there was provision made for "all other wastes, not specially provided for." In para-

:graph 1105, Tariff Act of 1922, there was no provision for card waste ·or bur waste, but "woolen rags" and "Wastes of the hair of the .Angora goat," etc., were added and a provision for "all other wool ·wastes not specially provided for" was inserted.

In *Downing Co.* v. *United States,* 12 Ct. Cust. Appls. 391, T. D. ·40582, to which further reference will be made later, this court pointed ·out that the tariff act of 1913 mentioned specifically two wastes ·which are not found in the Tariff Act of 1922, to wit, card waste and ·bur waste, and that these two wastes evidently fell within the catch-:all provision for "all other wool wastes not specially provided for."

When the Tariff Act of 1930 was passed, Congress expressly in-·cluded card and bur waste and provided special rates of duty thereon, ·depending upon whether or not they were carbonized. But, nevertheless, Congress again used as a catch-all provision the phrase "all other wool wastes not specially provided for."

When it was preparing the bill which became the Tariff Act of 1922 ·(which, with exceptions of subject matter the consideration of which is not important here, was identical with the Tariff Act of 1930) it had before it "Tariff Information Surveys" by the United States ·Tariff Commission on "Wool By-products and Wool wastes." The pamphlet contains 44 pages and the important subject of wool wastes ·was discussed from many different angles. We think it important that a number of the expressions used by the Tariff Commission in ·furnishing Congress this information should be here set out. All the ·different wastes provided for in the proposed 1922 act, paragraph 1105, were described as to their characteristics and uses. After discussing top waste, slubbing waste, roving waste, ring waste, garnetted waste, noils and other products used for remanufacture and which would take the place of wool, it stated:

"All other wool waste not specially provided for" consists mainly of bur waste and card waste. When the burs containing the wool fibers are removed from the scoured wool the combination is commercially known as bur waste. The burs hold small quantities of wool, which is recovered by carbonization or by mechanical means.

When wool is being carded, some of the fibers cling to the small wire teeth of the card clothing of the carding machine. These adhering fibers, which are usually much shorter than the wool being carded, when removed from the wire teeth are known as card waste.

*The wastes falling under this particular classification are employed in the manufacture of many kinds of woolen yarns that are mainly of the lower qualities.* [Italics ours.]

The amount of importations of these so-called wastes, the effect such importations had upon the consumption of wool, and many other considerations were pointed out to Congress. A reading of the information furnished to Congress convinces one that the rates of duty recommended and eventually inserted in the tariff act on wastes

were based upon the consideration that such wastes as fell within the paragraph were those only which were used in remanufacture and which were competitive with wool. All the figures submitted to the Congress as to the amount of imports when such wastes were on the free list, and when they were dutiable, are based upon those wastes which were consumed in remanufacture in the wool industry. We find in said volume at page 32 the following:

PRICES

All the materials mentioned in paragraph 1105 are to a very large extent used either directly or indirectly as substitutes for new wool, and as they are competitive with the latter material their value is in definite relation to the value of the new wool which they replace. The employment of these substitute materials is in response to a real public need, expressed through their increasing salability in the market, and their consumption therefore means conservation of the new wool. Furthermore, the increased use of such materials probably tends to lower the cost of certain finished goods, and possibly even the cost of finished goods in which they are not used.

The wholesale selling prices of slubbing and roving are normally about 15 to 25 per cent above those of the scoured wool from which they are obtained. Top, slubbing, roving, and ring wastes usually sell for approximately the same prices as the scoured wools from which they are produced. Uncarbonized noils usually sell for 20 to 30 per cent less than the scoured wools from which they come, but their value is enhanced by carbonization. The prices of thread or yarn wastes vary widely according to their type, but under ordinary conditions they are lower than those of any of the foregoing types of wastes. Clips, obtained from men's and women's wear, usually sell for about the same price as medium quality thread wastes. Garnetted waste is less valuable than the soft wastes, but sells for a higher price than the thread waste from which it is produced. Among the wastes not specially provided for in this paragraph are bur and card wastes, both of which are of distinctly lower quality than the other soft wastes. Wool shoddy is of considerably lower value than the better grades of thread wastes, but of about the same value as the lower grades of these wastes. Extract is a form of shoddy, being made by carbonizing rags containing some cotton. Mungo, which is the poorest of recovered wool fiber ordinarily sells for more than the better grades of rags. The range of prices for old woolen rags is very wide, some selling at higher prices than some grades of shoddy, but in general they are of lower value than any of the materials mentioned above. Skirted cloths are of still lower value than old woolen rags, and flocks are a relatively unimportant and very cheap waste.

The Tariff Commission also submitted to the Committee on Ways and Means of the House of Representatives in 1929, when the bill which became the Tariff Act of 1930 was under consideration, information which we think was in line with what it had already suggested in 1921, and which, judging from reports of the congressional committees hereinafter quoted from, was evidently relied upon by Congress. At page 1688 of the Summary of Tariff Information, 1929, is found the following:

DESCRIPTION AND USES.—Paragraph 1105 covers the materials which are referred to in paragraph 1103 as wool wastes and wool-waste material. The term "wool waste" does not imply something that is valueless but rather a part of the original raw material that has been discarded, at least temporarily, in the sequence of manufacturing processes. A part of this waste is remanufactured in the mills where made and a part is sold for manufacture elsewhere. Wool-waste material includes wool rags and the fibers recovered therefrom. Any of the foregoing may be referred to as a by-product, although this term is not used in commercial designations.

    *        *        *        *        *        *        *

"All other wool wastes not specially provided for" include mainly bur waste and card waste. Bur waste consists of particles of wool clinging to burs which have been knocked out of the wool by the bur rollers on a card or on a bur picker. Card waste is waste made at the card, mainly short fibers which became imbedded in the wire card clothing.

Again, all the statistics referred to as having an influence upon the rates to be adopted were based upon wool wastes which were to be remanufactured in the wool industry.

When the bill which became the Tariff Act of 1930 was reported to the House of Representatives by the Committee on Ways and Means, the following was contained in the report:

Paragraph 1105: With the exception of mungo, the duties on wool wastes, noils, shoddy, etc., are raised in proportion to the increase made in the duty on the medium and fine wools in paragraph 1102 from 31 cents to 34 cents per pound; the duty on mungo is raised somewhat more—that is, from 7½ cents to 10 cents per pound—because it is a partly manufactured product—i. e., is "pickered" inferior rags—and should pay a higher duty than rags.

The committee has not been able to agree with the woolgrowers who asked that the duties on all these wastes, etc., be made practically as high as the duties on the medium and fine wools, on the ground that they displace wool in the manufacture of clothing. These wastes, etc., do not displace wool; they supplement wool. They really furnish a market for wool, which must be mixed with these other materials in order that the wastes may be used in clothing. By using the wastes, cheaper clothing is made available for that part of our people who desire it. The wastes, therefore, do not displace wool, and, contrary to the claims of the woolgrowers, do not lower the price of wool. * * *

The Senate Committee on Finance in reporting out the bill had the following to say:

PARAGRAPH 1105.—WOOL WASTES AND BY-PRODUCTS

The rates of duty levied on wool by-products in the act of 1922 were based on the relative values of such materials and clean wool. For example: Noils are normally sold at approximately 80 per cent of the value of a corresponding grade of wool; therefore the rate on carbonized noils was placed at 24 cents per pound, or approximately 80 per cent of the wool duty of 31 cents per pound of clean content. The rates on yarn wastes, shoddy, wool rags, etc., were correspondingly lower.

The House bill retained the system of relative values as a basis on which to fix duties on wool by-products, i. e., they were increased in the ratio that clean wool was increased.

The committee believes that a duty is levied on wool for the purpose of protecting the American woolgrower and that if a substitute for wool is allowed to come in at a lower rate than the duty on wool the intent of Congress is defeated. The duties on wool by-products are therefore levied in accordance with their replacement values and not according to their relative values.

From the foregoing it seems reasonable to conclude that Congress, in preparing the wool waste provision, was only concerned about wastes of wool which would influence and affect the sale and use of wool, and we think that a waste which happens to be composed of wool but which cannot, under any circumstances, replace or be competitive with wool, was not intended to be subjected to the high rate of duty of 24 cents per pound.

In *Downing Co.* v. *United States, supra,* this court had before it a mixture of two or more woolen wastes, among them thread waste and ring waste. Unquestionably the product was waste. Unquestionably it was wool, but this court said:

We can not give our approval to the proposition that this mixture of wastes was such material as may properly be included within the designation of "wool wastes not specially provided for." In view of the express language of paragraph 1103, which will be later herein more particularly discussed, and in view of the history of this paragraph, we are of opinion that the "not specially provided for," clause of paragraph 1105, refers only to unmixed, definite varieties of wool waste, known to the trade, and not designated eo nomine in that paragraph. That there are such other kinds of wool waste is shown by paragraph 651 of the tariff act of 1913:

651. Wool wastes: All noils, top waste, card waste, slubbing waste, roving waste, ring waste, yarn waste, bur waste, thread waste, garnetted waste, shoddies, mungo, flocks, wool extract, carbonized wool, carbonized noils, and all other wastes not specially provided for in this section. * * *

While paragraph 1105 of the act of 1922 specifically mentions "top waste," "slubbing waste," "roving waste," "ring waste," "garnetted waste," "noils, carbonized," "noils, not carbonized," and "thread or yarn waste," the act of 1913 named specifically the above named wastes, and in addition thereto, "card waste" and "bur waste." In the tariff act of August 27, 1894, the varieties of waste last above named were specifically mentioned. It thus appears that there have been other varieties of wool waste, recognized by our tariff laws in the past, which may well be included within the designation of paragraph 1105, "all other wool wastes not specially provided for." There is no evidence that the mixture of wastes shown here is one known to the trade as a distinctive kind of waste.

There was a holding that, although the importation was waste and was wool, it was not the kind of wool waste Congress had in mind in the preparation and enactment of paragraph 1105 of the Tariff Act of 1922, and we think that decision has considerable bearing upon the correctness of our conclusion here.

The trial court in holding that the instant merchandise fell within the term "all other woolen wastes not specially provided for" relied

chiefly on the decision by this court in *Louisville Bedding Co.* v. *United States*, 14 Ct. Cust. Appls. 328, T. D. 41958. In that case, this court, in an opinion by Judge Barber, held that rags which were the clippings or cuttings resulting from cutting to pattern cloth used in the manufacture of cheap clothing, which rags were from 50 to 60 per centum wool in bulk, the wool being the chief value, the weight of the wool and cotton being about equal, the cotton being warp and the wool, weft yarns used in weaving the cloth, were dutiable as woolen rags under paragraph 1105 of the Tariff Act of 1922. *The issue presented there was whether or not the merchandise had to be substantially all wool or in chief value of wool.* While it may be noted in passing that the court's holding there seems to be in conflict with other decisions of this court, it is not a matter of concern here, since the issue there was not the issue presented here. The goods there were rags, and even though they were not used for remanufacture, we held, under the record then before us, that they were woolen rags. We do not have such a question here. Woolen rags are not involved. Woolen rags were specifically named in the Tariff Act of 1922. If the question there was whether or not the woolen rags were woolen waste not specially provided for, and the record in that case was the same as the one at bar, a different result might have been expected. It is true that in that case the court pointed out that some of the wastes provided for in that paragraph covered raw materials for use in the woolen industry. The court said:

\* \* \* On this assumption it is argued that as the rags here are not so used, they are not within the paragraph. But there is no proof that the use of such other articles is confined to the woolen industry. Undoubtedly, many thereof are waste produced in that industry, but it does not follow, nor does the paragraph indicate, that they are necessarily raw materials to be again or further used therein.

On this phase of the case the court cited *United States* v. *Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280, T. D. 41886, in which "flocks," which went into the making of wallpaper, were held to be "flocks" within the meaning of the paragraph, although the record showed these "flocks" to be used chiefly for making wallpaper. We held, in the *Imperial Wall Paper* case, that "flocks," being powdered ground-up wool, had been used for many years in the wool industry and that the mere fact that they had found a new use did not make them any the less "flocks."

We are of the opinion that the *Louisville Bedding Co.* case, *supra*, is no authority for a holding that a waste of wool should find classification under the provision "all other wool wastes not specially provided for," of the act at bar, if it is not susceptible of use in the wool industry.

The Government relies somewhat upon the following cases: *United States* v. *Cummings et al.*, 65 Fed. 495; and *Central Vermont Railway Co.* v. *United States*, 10 Ct. Cust. Appls. 31, T. D. 38260.

In the *Cummings* case, the merchandise consisted of pieces of waste· cloth left over in the manufacture of waterproof garments. They had been assessed as wool waste under paragraph 388 of the tariff act of 1890. They were composed of rubber, cotton and wool. They were claimed to be dutiable as "waste, not specially provided for" under paragraph 472 of said act. The wool content could not profit-· ably be recovered and utilized, although the rubber content could. The court held the merchandise to be properly classifiable under the· *eo nomine* provision for "all other wastes composed wholly or in part of wool." It is to be observed at once that the phrase "composed wholly or in part of wool" differs greatly from the provision found in· the wool waste paragraph 1105 for "all other *wool wastes* not specially provided for." (Italics ours)

In the *Central Vermont Railway Co.* case, *supra*, there were involved worn out pulp felts composed of wool. They had been used in paper· making machines. They had been assessed as manufactures of wool under paragraph 228 of the tariff act of 1913. The importer claimed that they were classifiable as "Wool wastes: * * * all other· wastes not specially provided for" in paragraph 651 of said act. The· court held that the merchandise was not manufactures of wool not, specially provided for as classified by the collector and held that it was: classifiable under the quoted provision of paragraph 651. It will be· noticed that although there was a provision for "all other wastes not specially provided for" in the paragraph which was headed by the· term "Wool wastes:" the language differed considerably from that. here under consideration. Furthermore it is to be observed that in: said decision it was definitely stated that "It appears of record that practically the only commercial use of these discarded felts is as. material for the manufacture of shoddy. This is sold to woolen mills, where it is used with wool to make yarn." Surely this case can lend no possible support to the contention of the Government.

In view of all the foregoing considerations, it is our opinion, and we· so hold, that the claim of the importer that the imported merchandise should have been classified under paragraph 1555 of the Tariff Act of· 1930 as "Waste, not specially provided for" at 10 per centum ad valorem should have been sustained. The judgment of the United States Customs Court, overruling such protest and holding the· merchandise dutiable as "all other wool wastes not specially provided for" at 24 cents per pound, is *reversed*, and the cause *remanded* for· proceedings consistent with the views herein expressed.