UNITED STATES v. CONTINENTAL COLOR & CHEMICAL CO. (No. 543).[1]

HYDROXIDE OF CHROME, A CRUDE SUBSTANCE USED IN DYEING AND TANNING.

Hydroxide of chrome, as here imported, in the state of its first production, unrefined and unfit for use for dyeing or tanning without being subjected to refining processes, was not dutiable as a chemical compound under either the tariff act of 1897 or that of 1909, but under each act was free of duty as an article in a crude state used in dyeing or tanning not specially provided for.

## United States Court of Customs Appeals, May 31, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7132 (T. D. 31102).

[Affirmed.]

D. Frank Lloyd, Assistant Attorney General (Charles Duane Baker on the brief), for the United States.

Curie, Smith & Maxwell (W. Wickham Smith and Thomas M. Lane of counsel) for the appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

Under the tariff acts of 1897 and 1909 the appellees imported into this country certain merchandise consisting of hydroxide of chrome. This is a chemical compound produced in Germany, and in the record it is otherwise variously denominated oxyhydrate of chrome, chrome oxyhydrate, and chrome oxyd.

The collector classified the article as a chemical compound within the meaning of paragraph 3 of each of the acts, and therefore assessed it for duty at the rate of 25 per cent ad valorem.

The appellees duly filed their protest to this ruling, and contended that the article should be admitted free of duty according to paragraph 482 of the act of 1897 and paragraph 499 of the act of 1909 as an article in a crude state used in dyeing or tanning, not specially provided for in the act.

The protest was duly heard upon evidence by the Board of General Appraisers, and the collector was reversed. The Government now prays for a reversal of that decision.

As has been stated, the merchandise in question was entered in part under the act of 1897 and in part under the act of 1909. The provisions of the two acts are substantially identical so far as this case is concerned, and for convenience we will refer to the act of 1897 alone in giving our decision upon the issue involved.

Paragraphs 3 and 482 of the act of 1897 read as follows:

3. Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all chemical compounds and salts not specially provided for in this act, twenty-five per centum ad valorem.

482. Articles in a crude state used in dyeing or tanning not specially provided for in this act.

---

[1] Reported in T. D. 31679 (20 Treas. Dec., 1265).

It is of course conceded that the substance in question is a chemical compound and would be controlled as such by paragraph 3, unless it also comes within the terms of paragraph 482 as an article in a crude state used in dyeing or tanning not specially provided for in the act. If the article is described by both paragraphs, then paragraph 482 would be dominant, because it is obviously the more specific of the two.

Paragraph 482 provides for articles in a crude state used in dyeing or tanning not specially provided for in the act. The appellant contends that this article as imported is not "in a crude state" and therefore does not fall within the class defined by the paragraph, even though it is used in dyeing and tanning. This presents the single question which is decisive of the issue.

The process which results in the production of hydroxide of chrome is fully described in the record. In the manufacture of anthraquinone from anthracene the anthracene is heated with a solution containing bichromate of sodium and sulphuric acid. The anthraquinone is thus produced in the form of a solid mass, which is filtered off, leaving a heavy, greenish liquid remaining. This liquid contains sulphuric acid and also the products formed from the bichromate of sodium. The liquid is thereupon treated by the addition of a watery mixture of magnesium oxide, which precipitates the chrome in the form of hydroxide of chrome—the substance in question in this case. This is filtered off, washed and packed, and imported. As thus packed it is a paste containing a large percentage of chromium oxide, a less percentage of chromium sulphate, some traces of arsenic, iron, lead, and antimony, and is about two-thirds water. About 1 per cent of the substance is composed of accidental impurities, such as chips and fibers.

The substance thus produced is used in this country as a mordant in the printing of textile fabrics and in tanning. In neither case, however, is it used in the form in which it is imported. For use in dyeing it is first treated with acetic acid and thereby converted into acetate of chrome. For use in tanning it is treated with sulphuric acid, forming a sulphate of chrome. In each case the resulting product is a different chemical compound from the hydroxide of chrome. That article as imported could not be used by dyers or tanners; it requires first to be treated as above stated, whereby it is converted chemically into new and different combinations. These new combinations only are the substances used in dyeing and tanning.

These facts are very clearly set out in the testimony and are indeed uncontradicted. They seem to furnish an answer to the question whether or not the importation is an article in a crude state used for dyeing or tanning. The article as imported is certainly in a crude state in two aspects. First, the article itself is in the state of its first production, without being refined by additional treatment applied for that purpose. In this condition it is mixed with various impuri-

ties. This is worthy of notice, although it may not be the controlling consideration within the purview of paragraph 482. The filtering and washing process described in the testimony had no effect on the article itself other than "to get it by itself." And second, it is an article in a crude state within the meaning of the paragraph, because, as imported, it is not in a condition fit for use in dyeing or tanning, but it is only a raw material which is to be converted by further treatment into other articles fit for such use. This is the important aspect in which the article may be said to be in a crude state. The paragraph treats of materials which are used in dyeing and tanning. The importation is simply a raw material in its relation to those uses and is therefore in a crude state in that respect. To prepare it for such uses other chemical elements must first be added to it, so that when finally used for such purposes it presents a different chemical combination.

In the Kuttroff case, cited by the appellant, the substance there in question, namely, chrome alum, was "refined," was "prepared by artificial process," and was also "in a complete form needing no other preparation for its use;" all of which was stated by the board in its decision of the case.

The decision of the board in the case at bar is therefore *affirmed.*