## STEGEMANN, JR., *v.* UNITED STATES (No. 1358).[1]

1. MARQUARDT-MASSE.

   The importer claims the merchandise is made of Marquardt-Masse. This term is not in common use and no authority is given that sheds any light on the question of what Marquardt-Masse is, of what it is composed, or how made. The record shows no chemical analysis of the tubes in controversy.

2. AN AFFIRMATIVE SHOWING HERE REQUIRED OF IMPORTER.

   The importer's contention is that the tubes were not dutiable under paragraph 94, but paragraph 95, tariff act of 1909. The burden is on him of establishing both these claims. Under the evidence if it were assumed the first contention is sound there is no proof of the other.

### United States Court of Customs Appeals, November 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34606 (T. D. 34127).

[Affirmed.]

*Comstock & Washburn* for appellant

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The question here is the proper rate of duty upon certain pyrometer tubes of different lengths. These tubes are used in the manufacture of apparatus for high temperature measurements. When used in furnaces they penetrate the roof or side walls and extend into the heated zone. There were three importations, one was assessed as plain porcelain, another as white china, and the other as white porcelain, all at the rate of 55 per cent ad valorem under paragraph 94 of the tariff act of 1909. It is stipulated, however, that the merchandise involved in all these protests is of the same kind and that the record, testimony, and exhibits as to one protest may be accepted in evidence as a part of the record as to the others.

The importer claims duty should have been taken at the rate of 35 per cent ad valorem under paragraph 95 of the same act. We insert here the respective paragraphs:

94. China, porcelain, parian, bisque, earthen, stone and crockery ware, plain white, plain brown, including clock cases with or without movements, pill tiles, plaques, ornaments, toys, charms, vases, statues, statuettes, mugs, cups, steins, and lamps, all the foregoing wholly or in chief value of such ware, not painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner; and manufactures in chief value of such ware not specially provided for in this section, fifty-five per centum ad valorem.

95. Articles and wares composed wholly or in chief value of earthy or mineral substances, not specially provided for in this section, whether susceptible of decoration or not, if not decorated in any manner, thirty-five per centum ad valorem; if deco-

---

[1] Reported in T. D. 34935 (27 Treas. Dec., 512).

rated, forty-five per centum ad valorem; carbon, not specially provided for in this section, twenty per centum ad valorem; electrodes, brushes, plates, and disks, all the foregoing composed wholly or in chief value of carbon, thirty per centum ad valorem.

At the hearing before the board but one witness, Mr. Wilson, the owner of the Wilson-Mauellen Co., for whose benefit the importations were made, was called. Testifying in his own behalf, he said, in substance, that these tubes were made of Marquardt-Masse, a substance known, he said, all over the world for many years as the only material of this general character that would stand a very high temperature and not melt; that Marquardt-Masse was not porcelain; that porcelain was used by makers of lower temperature pyrometers; that porcelain would not stand the high heat attempted to be measured by those he manufactured. He produced a sample of a porcelain tube, which he testified by its trade-mark showed it had been made by the same works which made "all grades of porcelain Marquardt fire clay refractory," which was admitted in evidence as an illustrative exhibit. Comparing the two, he said the importations were more porous than the illustrative exhibit; that the porcelain tube was a glazed material; that all true porcelain gives a glaze as the result, while the imported tubes, excepting the flanges at one end thereof which had not been subjected to the treatment, had a coating of glazing material, had been covered in a glazing material without resulting in actually glazing the same on account of the fact that the glaze had been largely absorbed; that he did not think they were glazed, but they had been rendered less porous by a glazing material; that he could say definitely from its appearance and physical properties that the imported merchandise was not porcelain, but he could not say what it was; that one reason why he was satisfied it was not porcelain was its porosity, but that its smelting point was the chief reason; that he used the term "porcelain" as meaning a material offered to him as porcelain tubes by makers thereof and as meaning material which had been sold as porcelain for any purpose he had ever run across; that he was not a potter or china maker at all. He further testified that these pyrometer tubes were never ornamented or decorated in any way; that he would not imagine anyone would decorate a tube to be used on the inside of a high temperature furnace; that the Marquardt-Masse more nearly approached fire clay than porcelain.

Upon this evidence the Board of General Appraisers overruled the protest, saying, among other things, that although the witness had testified the articles were not porcelain he was unable to state what they were and as the paragraph *eo nomine* provided for china, porcelain, parian, bisque, earthen, stone and crockery ware, the testimony of the witness was insufficient to base thereon a different

classification, and insufficient to enable them to definitely determine that the merchandise was not properly classified by the collector.

Upon the question as to whether or not the merchandise is porcelain or some other of the wares named in paragraph 94, the board has in effect failed to find that the importation is not one of these wares. Doubtless in considering the weight to be given to the importer's evidence on this question the board has taken into consideration the qualifications of the witness to testify upon the subject as well as what he said relating thereto.

It appears he is not a potter or china maker; that he uses the word "porcelain" as meaning the material sold as such for any purpose he has ever run across, which it is apparent refers chiefly if not entirely to porcelain tubes. He expressly states that he does not know what the merchandise is other than that it is Marquardt-Masse, a substance of which he says "it has been known all over the world for many years as the only material that will stand a very high temperature and not melt, of this general character that would be refractory."

In the argument in this court no citation is made to any authority which treats of Marquardt-Masse, nor have we found the term used in any dictionary or technical work. Lexicographers and technical writers mention so many varieties of porcelain, with varying characteristics, that the board may well have doubted if the evidence of the witness was sufficient to establish, as against the presumed correctness of the collector's classification, that these tubes are not of porcelain or of some other of the materials mentioned in paragraph 94.

The importer contends that under the authority of United States *v.* Fensterer (2 Ct. Cust. Appls., 368; T. D. 32094) this merchandise is not within the scope of paragraph 94, because it is not susceptible of decoration. In this connection it is conceded, as the fact is, that there is ample space and opportunity to decorate these tubes, but it is urged that, in a commercial sense, such decoration or ornamentation is practically unknown because of the use to which these tubes are devoted.

A discussion of this question, however, seems unnecessary to the disposition of the case. The importer claims that the merchandise is *not* dutiable under paragraph 94 and *is* dutiable under paragraph 95. The burden is upon him of establishing both these claims. Benjamin Iron & Steel Co. *v.* United States (2 Ct. Cust. Appls., 159; T. D. 31677); Gage Bros. & Co. *v.* United States (2 Ct. Cust. Appls., 427; T. D. 32174); Frank *v.* United States (2 Ct. Cust. Appls., 85; T. D. 31633); United States *v.* Park (3 Ct. Cust. Appls., 352; T. D. 32907).

If we assume that the merchandise is neither porcelain nor any other of the articles provided for in paragraph 94, or that, if one of

the articles therein named, it is not in the meaning of the statute susceptible of decoration or ornamentation, it still remains to be ascertained, and for the importer to show affirmatively, that these tubes are composed wholly or in chief value of earthy or mineral substances not specially provided for elsewhere than in paragraph 95. But importer's evidence is that he does not know of what these tubes are made, and we are unable to see why the board or this court should be asked to assume to possess greater knowledge on this subject than the witness. The term "Marquardt-Masse" is not in common use. We do not know, nor, as stated, are we referred to any writing or authority that sheds any light on the question of what it is, of what composed, or how made. A chemical analysis of these tubes and an explanation of the methods employed in their manufacture would undoubtedly afford a sufficient basis for their proper classification. This information the record does not contain. It was the duty of the importer to furnish the same, and hence, as we view the case, we are not justified in classifying the merchandise under paragraph 95 even if it be assumed that the evidence and the law warrant the conclusion that it is not classifiable under paragraph 94.

The judgment of the Board of General Appraisers is *affirmed*.