UNITED STATES v. MAINE CENTRAL RAILROAD CO. (No. 1649).[1]

1. CONSTRUCTION—PARAGRAPHS 27 AND 477, TARIFF ACT OF 1913.
The language in successive prior tariff acts of the provisions corresponding to paragraphs 27 and 477, tariff act of 1913, shows that Congress gradually narrowed their scope until they include those articles only which are drugs within the limitations set by the paragraphs.

2. SPRUCE GUM, HOW DUTIABLE.
Spruce gum is not a drug as the term is used in paragraph 27 or 477, tariff act of 1913, and hence is classifiable under neither of those paragraphs. It is, then, relegated to the residuary provisions of paragraph 385. The fact that it has been cleaned is not sufficient to make it a manufacture, and, so far as shown by this record, it is dutiable as a nonenumerated unmanufactured article under paragraph 385

United States Court of Customs Appeals, May 12, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38383.
[Reversed.]

*Bert Hanson*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.
*Eugene C. Brokmeyer* and *Leonard J. Mather* for appellee.

[Oral argument Apr. 26, 1916, by Mr. Hanson and Mr. Mather.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:
The merchandise is spruce gum. On importation it was classified and rated for dutiable purposes by the collector of customs at the port of Portland, Me., as a "gum advanced in value or condition" under the provisions of paragraph 27 of the tariff act of 1913, reading:

27. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, gums, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, and weeds; any of the foregoing which are natural and uncompounded drugs and not edible and not specially provided for in this section, *but which are* advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided*, That no article containing alcohol shall be classified for duty under this paragraph.

The importers made due protest, claiming the merchandise to be entitled to free entry under the provisions of paragraph 477 of that

act as a crude drug or gum not advanced in value, which latter paragraph reads:

477. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, gums, *gum resin*, herbs, leaves, lichens, mosses, *logs*, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds; any of the foregoing which are natural and uncompounded drugs and not edible and not specially provided for in this section, *and are in a crude state, not* advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided,* That no article containing alcohol shall be admitted free of duty under this paragraph.

Italics are ours and indicate the language in each paragraph not common to both.

The Board of General Appraisers sustained the protest. The opinion of the board aptly describes the importation, wherein it states:

From the testimony and samples submitted it appears that the gum has been cleaned to some extent by removing bark, pitch, and other impurities, and in the process of cleaning has been broken into small, irregular lumps. It is further shown by the testimony that, while the gum as scraped from the tree is sometimes dealt in in trade, the bulk of the gum bought and sold has been cleaned the same as the merchandise here imported. So far as this gum may have been broken into slightly smaller lumps, an examination of the samples clearly indicates that effect to be a mere incident to the cleaning.

It is contended, among other things, upon behalf of the Government and controverted by the importers, appellees, that spruce gum, whatever its form or condition, is not a "drug" within the provisions of said paragraphs 27 and 477; that the burden of proof was upon the importers before the Board of General Appraisers in order to sustain their protest under the provisions of paragraph 477 to show the merchandise within the provisions of that paragraph, including the fact that it was a gum or gum resin as therein provided. That the burden of proof is upon the importers to prove the allegations of their protest is well settled. Stegemann *v.* United States (5 Ct. Cust. Appls., 393; T. D. 34935); Benjamin Iron & Steel Co. *v.* United States (2 Ct. Cust. Appls., 159; T. D. 31677); Gage Bros. *v.* United States (2 Ct. Cust. Appls., 427; T. D. 32174); Frank *v.* United States (2 Ct. Cust. Appls., 85; T. D. 31633); United States *v.* Park & Tilford (3 Ct. Cust. Appls., 350; T. D. 32907).

Correlative paragraphs pertaining to this subject matter, occurring in the dutiable and free lists, have been the subject of many tariff acts, from 1883, at least, to and including the present act of 1913. It is important here to note only the limiting language of the respective paragraphs, for thereby is indicated a persistent evolution of purpose to restrict the amplitude of this legislative text to articles more essentially drugs. In the earlier acts, 1883 (par. 636), 1890

(par. 560), 1894 (par. 470), and 1897 (par. 548), this paragraph provided for and embraced also "woods used expressly for dyeing." The provision in the act of 1909 (par. 559) was enlarged to "woods used expressly for dyeing or tanning." Probably due to the decision in Leber & Meyer v. United States (135 Fed., 243), holding that articles used in dyeing and tanning, such as leaves and stems of the mastic tree, ground or crushed into a finely powdered condition, were not drugs within that paragraph (548) of the act of 1897, but paragraph 482 thereof, providing free entry for "articles in a crude state used in dyeing and tanning," the provision was omitted from the paragraph in pari materia in the act of 1913 (477, supra), thereby extruding therefrom certain materials not strictly drugs.

So, with practically the same enumerations bringing the force of their characteristics, under the rule of ejusdem generis, in support and amplification of the scope of the words "drugs, such as," as indicative of the amplitude of the paragraph, the gradual changes in the express words of limitation are significant. The enumerations, however, were changed from "drugs, barks," etc., in the act of 1883 to "drugs, such as barks," etc., in the act of 1890, and so continues. The express limitations read and were changed as follows: Paragraph 636, act of 1883, "any of the foregoing which are not edible and are in a crude state, and not advanced," etc.; paragraph 560, act of 1890, the same as in the act of 1883; paragraph 470, act of 1894, "any of the foregoing drugs which are not edible, and which have not been advanced," etc.; paragraph 548, act of 1897, "any of the foregoing which are drugs and not edible and are in a crude state, and not advanced," etc.; paragraph 559, act of 1909, and 1913 (477, supra), "any of the foregoing which are natural and uncompounded·drugs and not edible  *  *  *  and are in a crude state, not advanced," etc. Epitomized, this legislative course converged the paragraph from an enumeration of "drugs and barks," etc., in 1883 to "drugs, such as barks," etc., in 1890. While this paragraph of the act of 1890 would probably include all similar articles or things "such as" the enumerations, in 1894 Congress added the express declaration that the classes of the enumerations referred to were "drugs." In 1897 Congress further expressly confined the enumerations to articles "which are drugs." In 1909 and 1913 further limitation to such drugs as were "natural and uncompounded" was added. This certain, gradual confinement of the provision of Congress to a definite unmistakable scope bears unequivocal and patent witness of the congressional purpose to circumscribe the paragraph in its application to those articles only which are drugs. It follows that the gums and gum resins exempted from duty under this paragraph are only such as are "drugs" as therein defined and limited.

There is no commercial claim or proof made in this record, nor was there any showing made as to either the meaning of the terms or

the uses of the articles "drugs" or "spruce gum." The court therefore must resort to the lexicographers as instructive and the only enlightening sources available. The following are concise and representative:

Century Dictionary and Cyclopedia, 1911:

*Drug.*—1. Any vegetable, animal, or mineral substance used in the composition or preparation of medicines; hence, also, any ingredient used in chemical preparations employed in the arts.

*Spruce gum.*—A resinous exudation from the balsam fir, *Abies balsamea*, used as a masticatory.

Standard Dictionary, Twentieth Century Edition, 1909:

*Drug.*—1. Any substance used as a medicine, or an ingredient of chemical compositions used in the arts; in colloquial use, a narcotic.

*Spruce gum.*—The hardened resinous exudation from the black spruce or the white spruce.

Webster's New International Dictionary, 1910:

*Drug.*—1. Any substance used as a medicine, or in the composition of medicines, for internal or external use; formerly, any stuff used in dyeing or in chemical operations.

*Spruce gum.*—A resinous exudation from the white spruce, the black spruce, or the balsam fir, used as a chewing gum.

The term "drug" as used in the United States food and drugs act, June 30, 1906, "shall include all medicines and preparations recognized in the United States Pharmacopœia or National Formulary for internal or external use, and any substance or mixture of substances intended to be used for the cure, mitigation, or prevention of disease of either man or other animals"

The foregoing make it obvious that spruce gum, which by this record is assigned no other use than as a masticatory, can in no sense be classed as a drug, either as that word is limited by other provisions of paragraph 477 or in its broader sense. The same reasoning excludes it from the provisions of paragraph 27 of the act under which it was assessed by the collector. There being no evidence in the record assigning the importation other tariff status, these invoices, so far as appears, should be rated for duty under the unenumerated provisions of the act in paragraph 385. In that view the remaining issue ceases to be whether or not the merchandise is "advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing *of the drugs* and the prevention of decay or deterioration pending manufacture" under paragraphs 27 and 477, and becomes whether or not the goods are "manufactured, in whole or in part," under paragraph 385. Predicating our decision upon the findings of processes applied made by the Board of General Appraisers, *supra*, which are amply sustained by the record, the court is clearly of the

opinion that such processes as herein applied did not constitute these importations in whole or in any part manufactured articles.    Simpson v. United States (2 Ct. Cust. Appls., 222; T. D. 31952); United States v. Michelin Tire Co. (1 Ct. Cust. Appls., 518; T. D. 31544); United States v. Salomon (1 Ct. Cust. Appls., 246; T. D. 31277); United States v. Continental Color & Chemical Co. (2 Ct. Cust. Appls., 165; T. D. 31679); United States v. Sheldon & Co. (2 Ct. Cust. Appls., 485; T. D. 32245); United States v. Danker & Marston (2 Ct. Cust. Appls., 522; T. D. 32251); Hartranft v. Wiegmann (121 U. S., 609).

Being unmanufactured, upon this record, these importations are dutiable as an unenumerated unmanufactured article under said paragraph 385.    No question of similitude is made in the case.    The decision of the Board of General Appraisers is *reversed*.