UNITED STATES *v.* GALLAGHER & ASCHER Co. (No. 4555)[1]

United States Court of Customs and Patent Appeals, March 25, 1947

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Sybil Phillips*, special attorneys, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument February 11, 1947, by Mr. Weeks and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court, Third Division, C. D. 1011, sustaining the protest of appellee that the merchandise herein, invoiced as "cocoa cake" and entered as "unsweetened cocoa," was dutiable at three-tenths of 1 cent per pound under paragraph 730 of the Tariff Act of 1930 as vegetable oil cake, and overruling the action of the Collector of Customs at the port of Chicago in classifying and assessing the merchandise as unsweetened cocoa at the higher rate of duty provided for in paragraph 777 (a) of such act as modified by the Netherlands Trade Agreement, T. D. 48075.

The pertinent statutory provisions read as follows:

Par. 730. Bran, shorts, by-product feeds obtained in milling wheat or other cereals, 10 per centum ad valorem; hulls of oats, barley, buckwheat, or other grains, ground or unground, 10 cents per one hundred pounds; dried beet pulp, malt sprouts, and brewers' grains, $5 per ton; soy bean oil cake and soy bean oil-cake meal, three-tenths of 1 cent per pound; *all other vegetable oil cake and oil-cake meal, not specially provided for, three-tenths of 1 cent per pound;* mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feedstuffs, 10 per centum ad valorem. [Italics supplied.]

Par. 777. (a) Cocoa and chocolate, unsweetened, 3 cents per pound, on net weight.

(b) Cocoa and chocolate, sweetened, in bars or blocks weighing ten pounds or more each, 4 cents per pound; in any other form, whether or not prepared, 40 per centum ad valorem.

(c) Cacao butter, 25 per centum ad valorem.

Paragraph 777 as modified by the Netherlands Trade Agreement, *supra*, reads as follows:

| Tariff Act of 1930 paragraph | Description of articles | Rate of duty |
|---|---|---|
| 777 (a) | Cocoa and chocolate, unsweetened | 1½¢ per lb., net weight. |
| 777 (b) | Cocoa and chocolate, sweetened: | |
| | In bars or blocks weighing ten pounds or more each | 2¢ per lb. |
| | In any other form whether or not prepared, valued at 10 cents or more per pound. | 20% ad val. |
| 777 (c) | Cacao butter | 12½% ad val. |

The parties in support of their respective positions rely upon certain official reports published by the United States Tariff Commission.

The Government submits an excerpt from the Summary of Tariff Information, 1929, on the Tariff Act of 1922, volume 1, at page 1463, which relates to *"Chocolate and cocoa, sweetened or unsweetened, powdered or otherwise prepared,"* the source and method of preparing such commodities and the uses thereof. That excerpt, so far as pertinent, reads as follows:

DESCRIPTION AND USES.—Chocolate and cocoa are derived from the cocoa bean or crude cocoa (see paragraph 1551). After being cleaned, sorted, blended, and roasted, the crude cocoa beans are broken into small fragments termed "chocolate nibs," from which the shells (the outer husks of the bean) are removed by a winnowing process. * * * The nibs are then ground in heated mills and reduced to a plastic mass which hardens when cooled. This is the unsweetened chocolate (chocolate liquor) used by confectioners, bakers, and in the household. Much of this unsweetened chocolate liquor is further processed for sweetened chocolate, or for the manufacture of cocoa and cocoa butter. * * * When the liquid chocolate liquor obtained by grinding cocoa beans is subjected to pressure, cocoa butter is removed. *The resulting press cake is the familiar cocoa.* Breakfast cocoa has been officially defined as containing not less than 22 per cent of cocoa butter. Cocoa is sold in large containers to confectioners and bakers and in small cans for household use. * * * [Italics supplied.]

Appellee cites the following excerpt from the Digests of Trade Data respecting the products affected by the Netherlands Trade Agreement, 1936, at page 110, which reads as follows:

When the melted chocolate liquor is subjected to pressure cacao butter is removed. The press cake obtained in this operation, *after grinding*, becomes the familiar cocoa powder. [Italics supplied.]

Under the claims set forth in its protest and under the principles of customs litigation, appellee has the two-fold burden to prove: first, that cocoa pressed cake is not cocoa, unsweetened, as classified by the collector; and, second, to establish affirmatively that cocoa pressed cake is vegetable oil cake, not specially provided for, within the meaning of the tariff act as modified by the trade agreement hereinbefore described. *Stegemann, Jr.* v. *United States,* 5 Ct. Cust. Appls. 393, T. D. 34935. Should this court decide that appellee had

failed to meet the first of those two requirements, there would be no need to consider the second. See *United States* v. *Gardel Industries*, 33 C. C. P. A. (Customs) 118, C. A. D. 325.

Appellee produced the testimony of but one witness and the Government none. The Government, however, offered in evidence a report made by the United States Customs Laboratory which described a sample of the involved merchandise as "cocoa cake, unground cocoa, unsweetened."

Appellee's witness Karnopp testified, among other things, that he was president of the Kalva Corporation, the importer of record, whose principal business is the manufacture of chocolate flavoring sirups and powders used by the dairy industry for flavoring milk drinks and ice cream; that he has been engaged in the same line of business since 1926; that he was familiar with the process of pulverizing cocoa pressed cake which, he alleged, is fit for no use whatsoever until it has been pulverized and sifted into cocoa powder; that the terms "cocoa" and "cocoa powder" are synonymous; that he never bought or sold cocoa pressed cake as cocoa; that the pressed cake used in his factory was manufactured exclusively for human consumption; that there is no such thing as unground cocoa, and that "you can't have cocoa" until the pressed cake has been ground or pulverized.

A glass jar containing a sample of the cocoa pressed cake here involved and alleged to contain from 19 to 21 per centum fat content was introduced in evidence and marked "Plaintiff's Illustrative Exhibit A."

The witness Karnopp described the step in the method of manufacturing cocoa pressed cake as employed in the exporter's plant in Mexico by which chocolate liquor taken from a processing tank is put into a cocoa butter press, which consists of a series of covered pots. Pressure is then applied to the material in such pots and cocoa butter flows away; "The remainder is what the trade calls cocoa pressed cake."

The witness stated that cocoa pressed cake comes from the press in the form of a disk or cake measuring anywhere from 10 to 18 inches in diameter, depending upon the size of the pot in which the cake was produced. For convenience in shipping, the cakes are broken into lumps of the average size of the sample or exhibit in the jar.

That sample, the witness explained, was wholesome, pure and edible, but because of its hardness and bricklike character could not be eaten with any degree of comfort. The witness expressed doubt that a housewife could use the pressed cake very satisfactorily in the home but admitted that it could be grated.

The witness further stated that low-priced cocoas are often used for stock food, as a base for rat poison, and for several other purposes not connected with human food uses, but that "Cocoa is so scarce now that the nonfood uses are practically nonexistent."

The record discloses the following question asked by counsel for the Government and the answer thereto by the witness Karnopp:

R. X Q. Would you say that the pulverizing and sifting of the merchandise such as Plaintiff's Illustrative Exhibit A merely reduces its size?—A. That is the purpose we intend to accomplish and the purpose which we do accomplish.

There is no question that the pressed cake here involved is unsweetened. Whether it is "cocoa" within the common meaning of the term used in the tariff act is a matter of law to be decided by the court, and the testimony given by appellee's witness as to the common meaning of that term is to be considered by the court as advisory only and not as binding upon it. See *Stephen Rug Mills* v. *United States*, 32 C. C. P. A. (Customs) 110, 113, C. A. D. 293, and authorities therein cited.

As to the meaning of the term "cocoa," Webster's New International Dictionary, 1932, contains the following pertinent definitions:

*cocoa n.* [Corrupted fr. *cacao.*] *1.*=cacao, 1. *2. a* The pulverized seeds of the cacao, from which a portion of the fat has been extracted. *b* The beverage prepared by cooking this powder in boiling water.

*cacao, n.* [Sp., fr. Mex. *kakauatl.* Cf. cocoa.] *1.* A South American sterculiaceous tree * * *. *2.* The dried and partially fermented seeds of this tree as a commercial product. Cacao is used chiefly in the preparation of cocoa and chocolate. * * *

Funk & Wagnalls New Standard Dictionary, 1931, gives the following pertinent definitions:

*cocoa, n.* Dried and powdered seed=kernels of the cacao or chocolate=tree; * * * [Cor. of cacao.] * * * —*c.=powder, n.* A powder obtained by pulverizing cacao=beans after the oil has been partly expressed from them.

The dictionary definitions hereinbefore recited when read in the light of the excerpt from the Summary of Tariff Information, *supra*, and in the light of the testimony of appellee's witness relative to the method of producing cocoa, as correctly summarized in the opinion of the court below, would seem to imply that the term "cocoa" may be properly applied to more than one form of cocoa.

The Summary of Tariff Information, *supra*, discloses that when the liquid obtained after grinding the "chocolate nibs" or seed kernels of cocoa beans is subjected to pressure, the cocoa butter is removed and "The resulting press cake is the familiar cocoa." The Digests of Trade Data, *supra*, discloses further that the press cake thus obtained, "after grinding, becomes the familiar cocoa powder." In other words, before the product last mentioned becomes cocoa powder, the ingredients thereof, as hereinbefore described, are twice subjected to the process of grinding.

The Government concedes that cocoa press cake after grinding becomes cocoa powder and before being used to make liquid cocoa is "cocoa" within the common meaning of that term as used in the tariff act. The Government contends, however, that the cocoa press

cake before it is ground into cocoa powder is another form of cocoa and is likewise "cocoa" within the meaning of the statute and the trade agreement here involved.

That trade agreement, with the exception of the reduction in the rates of duty, is written in the same language as that of the statute which the agreement modifies. Paragraph 777, *supra*, by its respective provisions, prescribes the rate of duty for various forms of cocoa and chocolate. The involved provision of the tariff act is an unqualified *eo nomine* provision for unsweetened cocoa.

In the absence, therefore, of a showing on the part of appellee of a contrary intent expressed by Congress, and in the absence of proof of commercial designation, or the citation of controlling judicial authority or administrative practice to the contrary, the court is obliged to hold under the law and upon the facts presented that the cocoa pressed cake here in issue, and all other forms of unsweetened cocoa, is "cocoa" within the meaning of that term as employed in the tariff act and the trade agreement hereinbefore set forth. See *Centennial Flouring Mills Co. et al.* v. *United States*, 29 C. C. P. A. (Customs) 264, C. A. D. 200, and authorities therein cited. We are confirmed in this view by the legislative history hereinbefore quoted.

Although it was claimed in the appellee's protest that the merchandise here involved is dutiable as oil cake meal under paragraph 730, *supra*, no claim is made here that it is so dutiable. The sole claim of appellee is that the merchandise is dutiable as oil cake under that paragraph.

As hereinbefore noted the merchandise was imported in the form of lumps and, therefore, could not be held to be dutiable as oil cake meal as claimed in the protest. Assuming that the merchandise responds to the provision for vegetable oil cake under paragraph 730, *supra*, as claimed by appellee, the *eo nomine* provision for cocca, unsweetened, in paragraph 777, *supra*, is obviously more specific than the provision for vegetable oil cake provided for in paragraph 730, *supra*.

In view of our conclusion it is deemed unnecessary to present and pass upon other points raised here by the respective parties and the judgment of the United States Customs Court is accordingly *reversed*.