UNITED STATES *v.* C. J. TOWER & SONS (No. 4828) [1]
C. J. TOWER & SONS *v.* UNITED STATES (No. 4829)

[1] C. A. D. 608.

United States Court of Customs and Patent Appeals, December 2, 1955

*Warren E. Burger*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Dorothy C. Bennett*, trial attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for C. J. Tower & Sons.

[Oral argument October 7, 1955, by Mrs. Bennett and Mr. Schwartz]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

O'CONNELL, Acting Chief Judge, delivered the opinion of the court:

These cases involve cross appeals from a decision and judgment of the United States Customs Court, Third Division, C. D. 1624, sustaining protests 171562–K and 180707–K and holding the three shipments there involved to be entitled to free entry as zirconium ore concentrates under paragraph 1719 of the Tariff Act of 1930, and overruling thirteen other protests and holding the shipments involved to be dutiable under paragraph 214 of the Act as earthy or mineral substances wholly or partly manufactured.

The pertinent portions of the paragraphs in question are as follows: Tariff Act of 1930:

Par. 214. Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; * * *.

[Rate reduced to 15% ad valorem by General Trade Agreement, T. D. 51802, effective January 1, 1948.]

(Free List):

Par. 1719. Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture, not specially provided for: * * *

Paragraph 1719, as amended by the Brazilian Trade Agreement, T. D. 48034:

Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture, not specially provided for: zirconium ores or concentrates.

Paragraph 1719, as amended by the General Trade Agreement, T. D. 51802, effective January 1, 1948:

Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture, not specially provided for: Lignite, Cornwall

stone, gravel, natural gas, nepheline syenite, beryllium ore, titanium ore (except ilmenite and ilmenite (sand), columbium or niobium ores or concentrates, tantalum ore, and zirconium ores or concentrates . . Free

As pointed out in the brief for the United States, entry 3721 in protest 151609–K and entry 05382 in protest 135863–K cover material not involved here, the former never having been included in the list of entries consolidated for trial and the latter having been abandoned at the commencement of the trial. As to those two entries, therefore, Appeal No. 4829 will be dismissed.

The merchandise involved in these cases consists of alleged zirconium ore concentrates. Counsel for the parties entered into a stipulation of which the following portions are pertinent:

1. That with the exception of entries 1454 and 1585 in protest 180707–K and entry 2067 in protest 171562–K, all of the merchandise imported under the entries here involved was stabilized zirconium oxide produced in The Norton Company's Canadian plant by a process such as or similar to the process described in U. S. Patent 2,535,526, applied for January 19, 1950, and issued December 26, 1950 to A. H. Ballard and D. W. Marshall, and assigned to The Norton Company, the importer of the instant merchandise. A certified copy of the aforesaid patent is attached hereto as Exhibit "A" and is made a part of this stipulation.

2. That with the exception of the aforementioned entries 1454 and 1585 in protest 180707–K and entry 2067 in protest 171562–K, all the merchandise imported under the entries here involved contained approximately 3 to 5% of calcium oxide (lime) at the time of importation into the United States.

3. That the presence of the aforesaid amounts of calcium oxide (lime) in the imported merchandise was due to adding calcium oxide (lime) to the raw material in the Canadian plant of The Norton Company in addition to any calcium oxide (lime) which may have been present originally in said raw material.

\*     \*     \*     \*     \*     \*     \*

5. That the crystal structure of such of the instant importations as contain approximately 5% of calcium oxide (lime), or 5% of magnesium oxide, is essentially cubic.

6. That the crystal structure of such of the instant importations as contain approximately 3% of calcium oxide (lime), or 3% of magnesium oxide, is approximately 50% monoclinic and 50% cubic.

7. That the crystal structure of such of the instant importations as contain no added calcium oxide (lime), or added magnesium, is essentially monoclinic.

\*     \*     \*     \*     \*     \*     \*

12. That "Zircon Sand" is a common name for a natural physical state of zirconium silicate (zircon). It may contain some zirconium oxide (baddeleyite) as such, in small amount, some free silica, in small amount, and other impurities.

\*     \*     \*     \*     \*     \*     \*

15. That "Zirconium silicate" is a definite compound containing no free zirconium oxide as such, and no free silicon dioxide (silica) as such.

\*     \*     \*     \*     \*     \*     \*

22. That an ore of an element may occur in nature in the form of one or more chemical compounds.

23. That an ore may occur in various states of purity in nature.

With respect to the three entries in the present case to which no lime was added, the importer's witness Upper gave the following testimony:

Q. Referring to the product which was the subject of C. D. 1297, [a case incorporated in the record] and concerning which you testified in that case, I ask you whether that product is the same product or similar product to the three entries in the present case which have no added lime? A. They are identical.

Q. Was the process the same in Chippawa? A. The process was the same.

\*        \*        \*        \*        \*        \*        \*

Q. Now, referring to the remaining entries involved in this case, that is, those to which lime was added, was that produced in the same manner except for the addition of the lime as the product in C. D. 1297? A. Exactly.

From that testimony and the stipulation it follows that the merchandise in all the entires here involved was produced by the process of patent No. 2,535,526, except that in the three entries involved in Appeal No. 4828 no lime was added.

The process of patent No. 2,535,526 comprises fusing in an electric arc furnace a mixture of zirconium ore, carbon, iron borings and lime. As the result of this procedure the oxides of silicon and zirconium in the ore are separated from each other, the silicon oxide (silica) is reduced by the carbon to produce free silicon and this silicon combines with the iron to form a ferro-silicon which sinks to the bottom of the furnace and is readily separated from the other materials. The inclusion of the lime, which is referred to as a stabilizing agent, results in the production of a zirconium oxide (zirconia) which, instead of the natural monoclinic crystal structure has a crystal structure varying from 50% monoclinic and 50% cubic to 100% cubic, depending on the amount of lime used. The patent alleges that the so-called stabilized zirconia, having the cubic crystal structure is superior to that having a monoclinic structure.

## Appeal No. 4828

The merchandise involved in Appeal No. 4828 was produced by the process above-described, without the addition of lime. The raw material used was zircon sand which, as set forth in paragraph 12 of the stipulation above quoted, "is a common name for a natural physical state of zirconium silicate (zircon). It may contain some zirconium oxide (baddeleyite) as such, in small amount, some free silica, in small amount, and other impurities." Zirconium silicate contains zirconium, silica and oxygen in the proportions necessary to form zirconium oxide and silicon dioxide. Its formula may be written either as $ZrO_2 \cdot SiO_2$ or $ZrSiO_4$.

Zirconium silicate is a definite chemical compound, having properties which are distinct from those of either zirconium oxide or silicon dioxide. It can, however, be broken down by the action of heat

alone into the two substances last mentioned, and that change takes place in the process here involved. It is properly described by the witnesses as a chemical change induced by physical means.

The sole issue in Appeal No. 4828 is whether the chemical separation, by heating, of zirconium silicate into zirconium oxide and silicon dioxide, followed by removal of the silica, so that the remaining material has a much higher percentage of zirconium oxide than the original ore, is described as a concentrating process.

The witnesses for the importer testified that the process was a concentration and that the merchandise in each of the entries was a concentrate, basing their answers on the fact that such merchandise contained a substantially higher percentage of the desired material, zirconium oxide, than the original ore, and on the assertion that this zirconium oxide was unchanged chemically from that in the original ore. However, whether or not there was any change in the zirconium oxide itself, there is no dispute that the process which resulted in the alleged concentration of that substance did involve a chemical change, such change being an indispensable part of the process

It is the contention of the United States that ore concentrating processes properly speaking are limited to physical separation of ingredients only, and that any process which depends upon chemical changes is not a concentration but a metallurgical process and hence a manufacturing process. In support of that proposition the following definition is cited in the Government's brief:

Ore Dressing. *Concentration* of Ores, Washing of Ores, Separation of Ores. The preparation of ore for the smelter or market, by hand or mechanical means, whereby the valuable *minerals* are *concentrated* into *smaller bulk* and *weight* by the separation of the waste, or whereby two or more valuable minerals are spearated from each other. *Ore dressing differs from metallurgy* (q. v.) in that the *separation is made by mcehanical means*, whereas in *metallurgy* the separation is made *chemically*. Extraction of gold from ores by amalgamation must be considered as an ore dressing operation, and extraction by cyaniding, although often termed as ore dressing, is, strictly speaking, a *metallurgical* operation. (Italics not ours.)

In Webster's New International Dictionary (1939) the noun "concentrate" is defined as follows:

Concentrate n. (a) The product of dressing ore, consisting of finely ground minerals and containing the valuable ore.

That definition depends upon the meaning of ore dressing, which is defined in the same work as:

Ore dressing. Treatment of ore involving physical, not chemical, change, as crushing, concentrating, sampling, etc.

From those definitions it is clear that a concentrate must be the result of physical changes only.

Similarly, the Columbia Encyclopedia (1950) page 1267 describes several mechanical methods of concentration and states that "The general term for the treatment of an ore by heat is *smelting.*"

In the case of *State* v. *Northwest Magnesite Co.*, 182 Pacific (2d) 642, the Supreme Court of Washington quoted with approval the following statements, which appear to be applicable here, from page 1–01 of Taggart's Handbook of Mineral Dressing, which the court described as "an elaborate and careful work:"

Mineral dressing has three principal branches, viz: Ore dressing, which comprises the methods of separation of solid inorganic crudes by means which do not effect substantial chemical change; extractive metallurgy which utilizes chemical reaction for separation of the constituents of solid inorganic crudes; and fuel technology. * * * The valuable product of the ore-dressing treatment is called concentrate; the discarded waste is tailing.

It will be seen that the quoted statements are in complete accord with Webster's definitions, to the effect that a concentrate must be the product of a process which involves no substantial chemical change.

The court below relied on the decision in *McKesson et al.* v. *United States*, 113 Fed. 996. That case, like the present one, involved a fusion process. However, the language under consideration by the court did not concern ore concentrates but related to "Antimony ore, crude sulphite of." It was agreed that the word "sulphite" should have been "sulphide." The court said that "It is also conceded that if the paragraph of the free list read crude sulphide of antimony it would aptly describe the importation in controversy. In view of the similar provisions in previous acts it is to me entirely clear that this was precisely what congress intended." It is thus clear that that decision has no bearing on the instant issue as to what constitutes an ore concentrate, but relates merely to the meaning of "crude sulphide of antimony."

In the brief for C. J. Tower & Sons, reliance is placed on *Hampton Jr., & Co.* v. *United States*, 6 Ct. Cust. Appls. 392, T. D. 35926, 29 Treas. Dec. 597, and *United States* v. *Continental Color & Chemical Co.*, 2 Ct. Cust. Appls. 165, T. D. 31679, 20 Treas. Dec. 1265. The former case involved a purely mechanical separation of molybdenum from an ore by crushing and flotation, while the issue in the latter case was whether hydroxide of chrome produced by a specified process involving heat and chemical reactions was an article in a crude state. Neither case is pertinent to the present issue as to the meaning of the term "concentrate."

It was not held by the lower court, and does not appear to be urged here, that the merchandise involved in these appeals can qualify under paragraph 1719 except as a zirconium ore or concentrate, and it is clear that none of the other provisions of that paragraph are applicable here, since the furnace treatment and crushing serve to advance the material in value and condition so that it may no longer be regarded as crude.

We are of the opinion, upon careful consideration of the entire record, that the entries involved in Appeal No. 4828 are not zirconium ores or concentrates within the meaning of paragraph 1719 of the Tariff Act, but that they were properly classified by the collector as earthy or mineral substances wholly or partly manufactured, under paragraph 214. That portion of the decision from which Appeal No. 4828 was taken will accordingly be *reversed*.

## Appeal No. 4829

Each of the entries involved in Appeal No. 4829 was made by the process of patent No. 2,535,526, in which lime is added for the purpose of changing all or a part of the crystal structure of the zirconium oxide from monoclinic to cubic. The lime, which was not in the original ore, remains in solid solution in the zirconium oxide, as specified in claim 3 of the patent.

While the lime used in the process was added to the ore prior to the separation of the zirconium oxide from the ore, the lime played no material or necessary part in such separation. This is apparent from the fact that the zirconium oxide in those entries involved in Appeal No. 4828 was separated from the ore without the use of lime.

It is also significant that patent No. 2,535,526 does not refer to the process disclosed as one of concentration or separation, but as a method of producing stabilized zirconia (zirconium oxide), which is alleged to have superior properties. One of the objects of the patented invention is said to be "to produce zirconia with a stabilizing oxide included therein in solid solution."

We consider it to be apparent from the entire record that the use of lime is not for the ordinary purpose of effecting or assisting the separation of the zirconium oxide from the ore, but for the purpose of improving the quality of the zirconium oxide produced. Further, the lime, which formed no part of the ore, remains as an essential component of the stabilized zirconium oxide product.

Under the circumstances above set forth, we are in full agreement with the conclusion reached by the lower court that the entries included in Appeal No. 4829 are not zirconium ore concentrates, but are mineral substances wholly or partly manufactured and dutiable as such under paragraph 214 of the Tariff Act of 1930.

We also agree with the lower court that the entries numbered 7504 and 7999 in protest 153183–K, involved in Appeal No. 4829, which entries were made from scrap material by the process of patent No. 2,535,526, would not be ore concentrates whether or not lime was used in making them, since the scrap products from which they were produced could not properly be regarded as ore and accordingly those entries, even if they could be considered concentrates, were not zirconium ore concentrates.

56

Appeal No. 4829 is dismissed as to entry 3721 in protest 151609–K and entry 05382 in protest 135683–K. As to the remaining entries involved in these appeals, the decision of the United States Customs Court is modified, being *reversed* so far as it sustains protests 171562–K and 180707–K, and *affirmed* in all other respects.

JOHNSON and JACKSON, Judges, concur in the conclusion.

WILLIAM P. COLE, Jr., Judge, having participated below, disqualified himself to sit in this case and JACKSON, Judge, retired, was recalled to participate herein.